# ORIGINAL

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Dona D Stiles<br>16787 Beach Blvd #635<br>Huntington Beach CA 92647<br><br>dsafebox@aol.com<br><br>in pro se | **FILED**<br><br>**OCT 16 2017**<br><br>CLERK, U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: _____ Deputy Clerk |

☐ Attorney for:

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| In re:<br><br>Dona D Stiles | CASE NO.: 8:17-bk-13293-ES<br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF OBJECTION TO CLAIM** |
| | DATE: 11/16/2017<br>TIME: 10:30 am<br>COURTROOM: 5A<br>PLACE: United States Federal Bankrupcy Court<br>    411 West Fourth Street<br>    Santa Ana, CA 95701 |
| Debtor(s). | |

1. TO *(specify claimant and claimant's counsel, if any)*: The Bank of New York Mellon fka The Bank of New York, as Trustee for The Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-HYB6,

2. NOTICE IS HEREBY GIVEN that the undersigned has filed an objection to your Proof of Claim (Claim #_____) filed in the above referenced case. The Objection to Claim seeks to alter your rights by disallowing, reducing or modifying the claim based upon the grounds set forth in the objection, a copy of which is attached hereto and served herewith.

3. **Deadline for Opposition Papers**: You must file and serve a response to the Objection to Claim not later than 14 days prior to the hearing date set forth above.

   **IF YOU FAIL TO TIMELY RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.**

Date: 10/16/2017

Date Notice Mailed: 10/16/2017

Dona D Stiles
Printed name of law firm

_____
Signature

_____
Printed name of attorney for objector

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

5267 Warner Avenue #215, Huntington Beach CA 92649

A true and correct copy of the foregoing document entitled: **NOTICE OF OBJECTION TO CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On (date) __10/16/2017__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | | |
|---|---|---|
| The Bank of New York Mellon fka | The Honorable Erithe A. Smith | United States Trustee (SA) |
| The Bank of New York, as Trustee | United States Bankruptcy Court | 411 W Fourth St., Suite 7160 |
| Christopher M. McDermott, Attorney | 411 West Fourth Street, Suite 5040 | Santa Ana, CA 92701-4593 |
| 4375 Jutland Drive, Suite 200 | Courtroom 5A | |
| San Diego, CA 92177-0933 | Santa Ana, CA 95701 | |

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| __10/16/2017__ | Jon Stiles | /Jon Stiles/ |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                    Page 2                    **F 3007-1.1.NOTICE.OBJ.CLAIM**

Trustee
Waneta M Kosmala (TR)
3 MacArthur Place, Suite 760
Santa Ana, CA 92707

Dona D Stiles
16787 Beach Blvd #635
Huntington Beach, CA 92647
dsafebox@aol.com

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re: | ) Case No. 8:17-bk-13293-ES |
| | ) |
| DONA D STILES, | ) Chapter 7 |
| | ) |
| Debtor | ) **DEBTOR'S OBJECTION TO THE BANK OF NEW** |
| | ) **YORK MELLON'S "PROOF OF CLAIM"** |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**Debtor's Objection to Creditor's "Proof of Claim" under:**
**False Claims 18 U.S.C.§ 152(4)**

And now comes Debtor, Dona D Stiles, with her objection to The Bank of New York

Mellon's "Proof of Claim" filed on September 29, 2017, which Proof of Claim included The Bank of

New York Mellon's documents in the "Opposition to Motion to Avoid Lien Under 11 U.S.C.

§ 522(f) (Real Property)," stating that "there is no lien as a Non-Judicial Sale was conducted *which*

*extinguished all liens.* In the Opposition to Motion to Avoid Lien under 11 U.S.C.

§ 522(f) The Bank of New York Mellon ("BONY") clearly states that there is no lien in existence

whatsoever, whether Secured or Unsecured; yet at the same time, as its "Proof of Claim" The Bank of

New York Mellon asserts that the purported lien still existing and is Secured by the real property.

The Bank of New York Mellon cannot have it both ways and is in violation of the False Claims 18

U.S.C.§ 152(4) one way or the other.  One of the two filings is a Violation of the False Claims 18

U.S.C.§ 152(4).

Debtor's Objection herein lies in the fact that the proof of claim is defective and should be

withdrawn by counsel for The Bank of New York Mellon, Christopher M. McDermott, Aldridge,

Pite, LLP, for violation of 18 U.S.C. § 152(4) specifically, filing false and fictitious records into the

Federal court records. The fraudulent, forged and potentially altered documents were used in order to

unlawfully conduct a sale of the estate real property of Debtor on record commonly referred to as

3891 Finisterre Drive, Huntington Beach, California 92649.

LEGAL DESCRIPTION

LOT 67 OF TRACT 5132, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOX 182, PAGES 14, 15, 16, 17, 18,
19, AND 20 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF
SAID COUNTY, EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER
HYDROCARBONS, BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE
ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD

## STATEMENT OF FACTS

1) On or about July 11, 2005, Dona Stiles ("Debtor") executed an Adjustable Rate Note with
Countrywide with an original principal balance of $820,000, bearing an original MERS #
1001570052998487 and original loan # 108851487 for real property located at 3891 Finisterre Drive,
Huntington Beach, CA 92649 (the real "Property"). Copies of the Note and Deed of Trust were
submitted by BONY on September 29, 2017, as **Exhibits 1 and 2** and are incorporated herein by
reference.

2) On or about July 1, 2008, Bank of America ("BofA") acquired Countrywide ("CW") and retained
the <u>original MERS # and original loan #</u>.

3) On or about January 7, 2011, BofA recorded a Loan Modification using the original MERS # and
original loan #. A copy of the Loan Modification is attached hereto as **Exhibit A.**

4) On or about November, 27, 2013, BofA filed an Assignment of Deed of Trust signed by known
robo-signer, Trisha Jackson, as Assistant Secretary for MERS. This was over 8 years after the
original purchase. The Assignment of Deed of Trust listed Mortgage Electronic Registrations
Systems, Inc. ("MERS") as the Original Lender and ReconTrust Company, N.A. as the Original
Trustee. A copy of the Assignment of Deed of Trust was submitted by BONY on September 29,
2017, as **Exhibit 3** and is incorporated herein by reference.

5) On or about April 1, 2014, Bayview took over as "servicer" and created a new fictitious loan #
**1043457.**

6) On or about June 2, 2014, Bayview sent Debtor a "Notice of Default and Intent to Accelerate" letter identifying themselves as "debt collectors" informing Debtor of 30-day right to dispute on the fictitious loan #. A copy of the Notice of Default and Intent to Accelerate is attached hereto as **Exhibit B.**

7) On or about June 25, 2014, Debtor timely responded by certified mail to Bayview's June 2 notice with a Notice of Dispute of Debt and of the newly-created fictitious loan # in the entirety and a Qualified Written Response; Bayview never responded. A copy of the Notice of Dispute of Debt is attached hereto as **Exhibit C.**

8) On or about October, 19, 2015, ServiceLink Black Knight Financial Services recorded a fictitious Assignment of Trustee signed by Randall Jackson as Assistant Vice President for Bayview, assigning Seaside Trustee Inc ("Seaside"), as the Trustee. Nowhere on the document is there any verification, declaration, or affidavit, or any evidence to prove the authenticity of the information contained therein. A copy of the Assignment of Trustee is attached hereto as **Exhibit D.**

9) On or about April 22, 2016, Seaside filed a Notice of Default using a truncated fictitious loan # and, purportedly on behalf of BONY. A copy of the Notice of Default was submitted by BONY on September 29, 2017, as **Exhibit 4** and is incorporated herein by reference.

10) On or about May 26, 2016, Debtor timely responded to Seaside's Notice of Default by certified mail with a Notice of Dispute of Debt and of the newly-created fictitious loan # in the entirety and a Qualified Written Request, along with a copy of the debt validation letter dated June 25, 2014, that Debtor sent to Bayview. A copy of the May 26, 2016, Notice of Dispute of Debt is attached hereto as **Exhibit F.**

11) On or about June 15, 2016, Bayview responded to the May 26, 2016, Notice of Dispute of Debt by sending Debtor a letter backdated to August 27, 2014, and addressed "Dear Ms. Whitted" (not the Debtor's name), with the fictitious loan # handwritten above the original Countrywide Loan # as "evidence" of the Debtor's debt obligation to the fictitious loan #. A copy of the backdated response letter is attached hereto as **Exhibit G.**

12) On or about July 21, 2016, Seaside filed a Notice of Trustee's Sale purportedly on behalf of BONY, using the truncated fictitious loan #. A copy of the Notice of Trustee's Sale was submitted by BONY on September 29, 2017, as **Exhibit 5** and is incorporated herein by reference.

13) On or about September 30, 2016, Bayview mailed a letter to Debtor identifying themselves as a debt collector and providing the note with the fictional loan number handwritten. A copy of this letter is attached hereto as **Exhibit H.**

14) On or about December, 12, 2016, Seaside foreclosed at Trustee Sale using Superior Default Services, Inc. ("Superior") to conduct a Trustee Sale on Debtor's home using the fictitious loan number and fraudulent paperwork described above. Superior's Auctioneer informed Debtor that since there were no bids, the property reverted to BONY as REO.

15) On or about December 20, 2016, Seaside filed a Trustee's Deed Upon Sale. A copy of the Trustee's Deed Upon Sale is attached hereto as **Exhibit I.**

16) On or about August 17, 2017, Debtor files the instant Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Central District of California, Santa Ana Division and was assigned case number: 8:1-bk-13293-ES.

17) On or about September 15, 2017, Debtor filed the Motion to seek Court order to Avoid Lien Under 11 U.S.C. 522(f) Real Property.

18) On or about September, 29, 2017, Attorneys representing BONY filed Opposition to Motion to Avoid Lien Under 11 U.S.C. 522(f) Real Property. **This filing constitutes the entire PROOF OF CLAIM and is incorporated herein by reference.**

<u>**False Claims—18 U.S.C. § 152(4) (USAM Criminal Resource Manual at 851)**</u>

Subsection (4) of Section 152 sets out the offense of filing a false bankruptcy claim. A "claim" is a document filed in a bankruptcy proceeding by a creditor of the debtor. It is sometimes also called a "proof of claim." For the purposes of this section the nature of the claim is immaterial-- i.e., the claim can be secured or unsecured, liquidated or unliquidated, disputed or undisputed. A "false" claim is one that is known by the creditor to be factually untrue at the time the claim is filed.

Subsection (4) provides:

> A person who...knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity or as or through an agent, proxy, or attorney;...shall be fined..., imprisoned..., or both.

The elements of a false claim violation are:

1. that bankruptcy proceedings had been commenced;
2. that defendant presented or caused to be presented a proof of claim in the bankruptcy;
3. that the proof of claim was false as to a material matter; and
4. that the defendant knew the proof of claim was false and acted knowingly and fraudulently.

*United States v. Overmyer*, 867 F.2d 937, 949 (6th Cir.), *cert. denied*, 493 U.S. 813 (1989).

A claim can be asserted by a creditor whether or not it is reduced to judgment, whether the claim is liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured or unsecured. *United States v. Connery*, 867 F.2d 929, 934 (*reh'g denied*)(6th Cir. 1989), *appeal after remand* 911 F.2d 734 (1990).

Since the falsity of a claim, in most cases, is obvious, the key issue frequently becomes what was the defendant's state of mind at the time of the filing of the claim. Good faith is a complete defense to this charge. The filing of a false claim is not a crime where there was a good faith belief in its accuracy. *United States v. Connery*, 867 F.2d 929, 934 (*reh'g denied*)(6th Cir. 1989), *appeal after remand* 911 F.2d 734 (1990).

A proof of claim is not false merely because it may be inaccurate or erroneous in any or all respects. The claim may be asserted by a creditor in good faith even though the moneys being sought are thereafter successfully disputed by the debtor or disallowed by the Bankruptcy Court. Instead, a proof of claim is false if the statements contained therein are intentionally inaccurate and submitted without any good faith basis for the claim and are not the result of some mistake or clerical error or inadvertent omission.

*United States v. Overmyer*, 867 F.2d 937, 950 (6th Cir.), *cert. denied*, 493 U.S. 813 (1989), *appeal after remand*, 899 F.2d 457 (6th Cir. 1990), *cert. denied*, 498 U.S. 939 (1990)(quoting above instruction with approval).

## 18 U.S.C. § 152 Violations (USAM Criminal Resource Manual at 840)

18 U.S.C. § 152 "attempts to cover *all the possible methods* by which a bankrupt *or any other person* may attempt to defeat the Bankruptcy Act through an effort to keep assets from being equitably distributed among creditors." *Stegeman v. United States*, 425 F.2d 984, 986 (9th Cir.), *cert. denied*, 400 U.S. 837 (1970)(citation omitted; emphasis in original). Moreover, "18 U.S.C. § 152 was enacted to serve the important interests of government, not merely to protect individuals who might be harmed by the prohibited conduct." *Id.*

The nine paragraphs of the section prohibit the following activities:

1. the concealment of property belonging to the estate of a debtor;
2. the making of false oaths or accounts in relation to any case under Title 11;
3. the making of a false declaration, certificate, verification or statement under penalty of perjury as permitted under Section 1746 of Title 28 or in relation to any case under Title 11;
4. the making of false claims against the estate of a debtor;
5. the fraudulent receipt of property from a debtor;
6. Bribery and extortion in connection with a case under Title 11;
7. transfer or concealment of property in contemplation of a case under Title 11;
8. the concealment or destruction of documents relating to the property or affairs of a debtor; and
9. the withholding of documents from the administrators of a case under Title 11.

The separate paragraphs of Section 152 create separate crimes, the violation of which may be indicted separately. *United States v. Gordon*, 379 F.2d 788, 790 (2d Cir.), *cert. denied*, 389 U.S. 927 (1967); *United States v. Arge*, 418 F.2d 721 (10th Cir. 1969). Separate violations of separate paragraphs of § 152 constitute multiple counts, because each requires proof of a different set of facts. *United States v. Roberts*, 783 F.2d 767 (9th Cir. 1985); *United States v. Kaldenberg*, 429 F.2d 161 (9th Cir.), *cert. denied*, 400 U.S. 929 (1970); *United States v. Christner*, 66 F.3d 922, 928 (8th Cir. 1995).

However, it is not appropriate to allege two offenses and impose two convictions as a result of the same set of facts. *See United States v. Ambrosiani*, 610 F.2d 65 (1st Cir. 1979), *cert. denied*, 445 U.S. 930 (1980). In *United States v. Graham*, 60 F.3d 463 (8th Cir. 1995) the charging of three separate counts of making false statements was not permitted even though the debtor told the same false

statement to three different people at three successive meetings of creditors because the repetition of the false statement did not add to the harm sustained by the bankruptcy estate.

*KNOWINGLY AND FRAUDULENTLY*: All the crimes described in the various paragraphs of Section 152 require that the criminal act be done "knowingly" and "fraudulently." An inadvertent error does not support a violation of Section 152 because the statute proscribes only false statements that are made "knowingly and fraudulently." *United States v. Ellis*, 50 F.3d 419, 426 (7th Cir.), *cert. denied*, 116 S. Ct. 143 (1995).

The term "fraudulently" means that the act was done with the intent to deceive. *United States v. Diorio*, 451 F.2d 21, 23 (2d Cir. 1971), *cert. denied*, 405 U.S. 955 (1972). Fraudulent intent may be proven circumstantially. *United States v. Goodstein*, 883 F.2d 1362, 1370 (7th Cir. 1989), *cert. denied*, 494 U.S. 1007 (1990); *United States v. Weichert*, 783 F.2d 23 (2d Cir.), *cert. denied*, 479 U.S. 831 (1986)(fraudulent intent inferred from the hurried formation of a new company after the debtor company has filed Chapter 11 and from the diversion of assets before a trustee is appointed); and *United States v. Catabran*, 836 F.2d 453, 459 (9th Cir. 1988)(removal of the carpeting which belonged to the landlord was admissible to show intent to start new business with old business' assets, even though carpeting was not an asset of the estate.

The statutory requirement that the underlying acts be performed knowingly requires only that the acts be voluntary and intentional; the government does not have to show that the defendant knew that he or she was breaking the law. *United States v. Zehrbach*, 47 F.3d 1252 (en banc)(3d Cir. 1995), *cert. denied*, 115 S. Ct. 1699 (1995).

A jury instruction that "an act is done 'knowingly' when that act is done voluntarily and intentionally, not because of mistake or accident" does not need to be qualified by the phrase "or other innocent reason" where the jury is otherwise instructed on a good faith reliance defense. *United States v. Smithson*, 49 F.3d 138, 142 (5th Cir. 1995).

**Debtor is alleging that the "Proof of Claim" was electronically submitted to the Court and shows in part, the following material defects in the purported Creditor's" Proof of Claim", namely The Bank of New York Mellon, at the time of filing.**

1) Redaction of the Original Loan number and the substitution of a false loan number that was never signed by debtor and was intentionally used as concealment, in false recordings, and created for the purpose to foreclose on debtor's property.

2) Omissions, concealment, and numerous false recordings including the "Trustee's Deed Upon Sale" (TDUS) in their Exhibits that clearly reveals numerous instances of fraud. All of which will be proven at the time of trial.

3) Exhibition of the fraudulent Recon Trust "Assignment Deed of Trust" dated November 2013, of a July 2005, Countrywide origination. The over 8 year time lapse in the recordation of the Assignment is forged and false and would lead any reasonable person to suspect the validity of the documents in their entirely.

4) The above-stated conduct and actions by the alleged creditor amount to an Intentional and Fraudulent unlawful taking of title concerning the real property of Debtor in violation of various Federal and State laws.

5) The Proof of Claim is Fraudulent in its entirety, and we are asking the court and the Attorney for Aldridge, Pite, LLP, to either voluntarily withdraw the Proof of Claim or that the Judge order the removal of the Proof of Claim from the docket, on the Judge's own motion, until such time as the documents have been authenticated according to both State and Federal law.

6) The concealment of property belonging to the estate of a debtor;

7) The making of false oaths or accounts in relation to any case under Title 11;

8) The omission of declarations, certificates, verifications or any affidavit is intentional so as to avoid the criminal penalties as outlined in 18 U.S.C. § 152.

9) The making of a false declaration, certificate, verification or statement under penalty of perjury as permitted under Section 1746 of Title 28 or in relation to any case under Title 11;

**The making of False Claims against the estate of a debtor constitutes Fraud**.

This objection is specifically requesting the Honorable Erithe A. Smith to take judicial notice of the Fraud before making any judicial ruling regarding the authenticity of the purported creditor's Proof of Claim, or the granting of any relief from Stay or Automatic Stay that may be introduced by Attorney Christopher M. McDermott, Aldridge, Pite, LLP, or their related parties in this matter.

Notice is given to the Attorney, Christopher M. McDermott of Aldridge, Pite, LLP, whose

address is: 4375 Jutland Drive, Suite 200, PO Box 17933, San Diego, CA 92177-0933, who either

knew or should have known that each and every document that he submitted was fraudulent, forged

or potentially altered, prior to filing it with the Federal Court, in violation 18 U.S.C. § 152(4). There

are no Verifications, Declarations, Affidavits attached in The Bank of New York Mellon "Proof of

Claim" all of which are required to satisfy the element of "Proof".

The attorney for The Bank of New York Mellon is required to show proof under both State

and Federal law, that all documents submitted into the Court record are not in violation of CPC

California Penal Code 115, by providing Affidavits, Declarations, and Statements provided by

persons with firsthand knowledge of the business records. The Bank of New York Mellon has failed

to provide the necessary Authentications as required under 18 U.S.C. § 152(4).

Furthermore, the attorney has no personal nor first-hand knowledge as to the authenticity of

any of the documents that he filed that day.

Most importantly is the Omission of the "Black Knight-Substitution of Trustee" dated

October, 19, 2015, document marked as Exhibit D" which was **intentionally omitted** from the Court

record by The Bank of New York Mellon.  The significance of that assertion is the fact that without

the actual introduction of this forged document (that was used by The Bank of New York Mellon to

conduct the fraudulent Non-Judicial foreclosure sale), Debtor would not have been forced into filing

for Bankruptcy protection in the first place.

### § 3-203. TRANSFER OF INSTRUMENT; RIGHTS ACQUIRED BY TRANSFER.

 Fraud or Illegality in any assignment of a Deed of Trust/Mortgage renders it Void and unenforceable

under UCC-3-309

(a) An instrument is transferred when it is delivered by a person other than its issuer for the

purpose of giving to the person receiving delivery the right to enforce the instrument.

(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the

transferee any right of the transferor to enforce the instrument, including any right as a holder in due

course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or

indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the

instrument.

**(Broken Chain of Title, Illegal Assignments, Falsification, Fabrication of Documents and**

**Intentionally Altered or False Filings):**

**The 2016 Assignment of Deed of Trust to Seaside Trustee Inc. for the purpose of foreclosing on**

**Debtor was a Fraudulent, Forged and Intentionally Altered document and the Assignment was**

**Intentionally made for the sole purpose of fabricating an Illegal Assignment necessary to**

**Foreclose in a Non Judicial Foreclosure State such as California.**

    See text below from the August 15, 2016 Meet and Confer Request, which is also attached as

**Exhibit E.**

    RE: <u>MEET AND CONFER REQUEST</u>- *Code of Civil Procedure§* 430.41(a)

Dear Ms. Stiles:

This firm has been retained to represent Defendants, Mortgage Electronic Registration Systems, Inc. ("MERS"), Seaside Trustee, Inc., and The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-HYB6 , Mortgage Pass-Through Certificates, Series 2005-HYB6 ("BONYM") (collectively "Defendants"), in the above-captioned matter. Accordingly, please direct all future communications regarding my client's involvement in this matter to my attention.

We are writing you because, following our review of your Complaint in this matter, we have determined that Defendants will be responding with Demurrers. The California *Code of Civil Procedure§* 430.41(a) requires that: "Before filing a demurrer pursuant to this chapter, the demurring party shall meet and confer in person or by telephone with the party who filed the pleading that is subject to demurrer for the purpose of determining whether an agreement can be reached that would resolve the objections to be raised in the demurrer... " Section 430.41 (a)(l) provides "As part of the meet and confer process, the demurring party shall identify all of the specific

causes of action that it believes are subject to demurrer and identify with legal support the basis of the deficiencies. The party who filed the complaint, cross- complaint, or answer shall provide legal support for its position that the pleading is legally sufficient or, in the alternative, how the complaint, cross-complaint, or answer could be amended to cure any legal insufficiency."

The statute requires an in person or telephonic conference. In an effort to make that conference more productive, I am sending this letter to you in advance so you can prepare for the conference.

In compliance with that statute, please note the following: your Complaint attempts to allege causes of action for: 1) Violation of California Business & Professions Code, § 17200; 2) Breach of the Covenant of Good Faith and Fair dealing; 3) Injunctive Relief; 4) Violation of *Civil Code* § 1572; 5) Declaratory relief; 6) Set Aside Void Instruments; and 7) Violation of the California Homeowner's Bill of Rights ("HOBR"), all which are based upon on your unsupported contention that Defendants lacked the authority to commence foreclosure and that MERS lacked the authority to assign the loan. In addition, you also claim that Defendants are required to produce the original Note, in order to foreclose, an argument that has long since been rejected in California courts. *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 834; *IE. Assocs. v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285; *Gomes v. Countrywide Home Loans, Inc.,* (2011) 192 Cal.App.4th 1149, 1154; *Debrunner v. Deutsche Bank Nat'/ Trust Co.,* (2012) 204 Cal.App.4th 433, 440; *Civil Code* sections 2924, *et seq.* The Complaint also alleges a cause of action for violation of HOBR, specifically, dual tracking.

As an initial matter, when you executed the Deed of Trust you agreed that MERS would be the beneficiary. In fact, the DOT expressly states, "MERS...is a separate corporation that is acting solely as nominee for the *Lender and Lender's successors and assigns.* MERS is the beneficiary under this Security Instrument." See, DOT, pg., 2, paragraph (E). Further, MERS's involvement in the loan ceased after the execution of the Assignment. Thus, your claims now that MERS lacked the authority to formally transfer all beneficiary interest under the DOT to BONYM are without merit. Further, your theory that Defendants are required to produce the original note in order to initiate foreclosure has long since been rejected by California law. Non-judicial foreclosures in California are governed by comprehensive and exclusive regulations, *Civil Code§§* .2924-2924i, which <u>do not</u> require that the note be in the possession of the party initiating the foreclosure.

With regard to your dual tracking claim [although you do not cite to the specific code section in the Complaint], we presume you mean *Civil Code§* 2923.6. Section 2923.6, which states in pertinent part: "[i]f a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." Here, your Complaint is devoid of any allegation regarding *any* loan modification application being pending at

the time the Notice of Default and Notice of Trustee Sale were recorded, April 22, 2016 and August 18, 2016, respectively. Indeed, our Clients have no record of any loan modification application from you.

With respect to your other causes of action for: Violation of California Business & Professions Code, § 17200; Breach of the Covenant of Good Faith and Fair dealing; Injunctive Relief; Violation of *Civil Code* § 1572; Declaratory relief; Set Aside Void Instruments, all rise and fall based upon your allegations that MERS lacked the authority to formally transfer all beneficiary interest in the DOT to BONYM, as well as the holder of the note theory, which as discussed above, has been routinely rejected by the Courts in California. In addition, you failed to meet the requirements in each of the causes of action identified above, if not all.

In order to bring a claim under Section 17200, you must show either an 1) unlawful, unfair, or fraudulent business act or practice, or 2) unfair, deceptive, untrue, or misleading advertising, *[Stewart v. Life Ins. Co. of North America,* (E.D. Cal. 200) 388 F. Supp. 2d 1138, 1143 *(citing Lippitt v. Raymond James Fin. Servs.,* (9th Cir. 2003) 340 F.3d 1033, 1043] and the claim must be supported by facts set forth with reasonable particularity. *Khoury v. Maly's of California, Inc.,* (1993) 14 Cal. *App.* 4th 612, 619. A UCL claim is intended to address ongoing conduct; relief is not available for purely past conduct. *Mangini v. Aerojet-General Corp.,* (1991) 230 Cal. *App.* 3d 1125, 1155-56. Also, there is no vicarious liability in actions brought under the UCL; rather, a defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices. *Emery* v. *Visa Internal. Service Ass'n,* (2002) 95 Cal. App. 4th 952,960; *accord Perfect 10, Inc. v. VISA Int'l Service Ass'n,* (9th Cir. 2007) 494 F.3d 788, 808-809. Here, you meet none of these requirements.

In order to state a proper claim for breach of the covenant, Plaintiff must allege that: (1) Plaintiff and Defendants entered into a contract; (2) Plaintiff did all or substantially all that the contract required her to do or that she was excused from having to do; (3) all conditions required for Defendants' performance had occurred; (4) Defendants unfairly interfered with Plaintiff's right to receive the benefits of the contract; and (5) Defendants' conduct harmed Plaintiff. *Guz v. Bechtel Nat'l, Inc.,* (2000) 24 Cal.4th 317, 349; *Villegas v. Wells Fargo Bank, NA.* (N.D. Cal., 2012) 2012 WL 2931343, at \*9. Significantly, the covenant of good faith and fair dealing does *not* impose substantive duties or limits on the contracting parties *beyond those incorporated in the specific terms of their agreement* and it cannot contradict the express telms of a contract. *Guz, supra,* at 349-350; *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.* (1992) 100 Cal.App.4th, 44, *55.* Here, your Complaint fails to allege <u>any</u> facts to support your claim.

With respect to your Cause of Action for injunctive relief, Injunctive relief is a <u>remedy</u> and not, in itself, a cause of action. *Shell Oil v. Richter,* (1942) 52 Cal.App.2d 164, 168. A cause of action must exist before injunctive relief may be granted. *Id.* In order to state a cause of action for injunctive relief, Plaintiff must establish the probable likelihood that she will prevail on the merits of the underlying causes of action. *Langford v. Sup. Ct.,* (1987) 43 Cal.3d 21. Here, based upon the allegations in the Complaint, it is unlikely that you will prevail on your claims. Further, you are not

entitled to Declaratory Relief. The declaratory relief claim is wholly derivative of the substantive law claims already asserted elsewhere in the Complaint. It adds nothing to the pleading and fails just as the substantive claims that follow it are deficient. Generally, an action in declaratory relief will not lie to determine an issue which is already the subject of an existing claim: "The declaratory relief statute should not be used for the purpose of anticipating and determining issues which can be determined in the main action. The object of the statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues." *California Ins. Guarantee Ass'n v. Superior Court,* (1991) 231 Cal. App. 3d 1617, 1623-24, citing *General of America Ins. Co. v. Lilly,* (1968) 258 Cal. App. 2d 465, 470.

Based on the above, the claims raised in the Complaint are all improper and fail against Defendants. There may be other minor issues to raise on demurrer, however, for the sake of the meet and confer, I have highlighted what I feel are the most important and fatal defects in the Complaint.

Please contact me at jbrady@wrightlegal.net to advise me of your availability to hold the meet and confer to take place by no later than **August 26, 2016,** or I will have no alternative but to file the motions and advise the Court that you were unable to meet and confer despite my request.

Sincerely,

WRIGHT, FINLAY & ZAK, LLP

/original signed/

Jennifer A. Brady, Esq.
JAB:lrr

**The August 15, 2016 Meet and Confer letter above in is contradiction to the October, 19, 2015,**

**Black Knight Substitution of Trustee attached as Exhibit D.**

## Declaration of Dona D Stiles

and Certification

Under Federal Rule of Civil Procedure 11, by signing below, I Declare and certify to the best

of my knowledge, information, and belief that this Opposition to The Bank of New York Mellon

Proof of Claim:

(1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the complaint otherwise complies with the requirements of Rule 11.

(5) has been provided by me to the best of my belief and knowledge.

(6) A true and complete copy of the complete proof of claim, including attachments or exhibits, is attached to the objection to claim,

Date of signing:        10-16-2017

Signature of Plaintiff   _____

Printed Name of Debtor:  Dona D Stiles

### Memorandum of Points and Authorities

### Litigation and major legal decisions

The blur of the actual identities of the "MERS" related entities has led to confusion within the court system and foreclosure process.

***Mortgage Electronic Registration Systems, Inc. v. Lisa Marie Chong, et al. (United States District Court, District of Nevada)***

On December 4, 2009, Judge Dawson found that "MERS provided no evidence that it was the agent or nominee for the current owner of the beneficial interest in the note, it has failed to meet its burden of establishing that it is a real party in interest with standing." He issued his decision in 5 of the 18 cases (In re Chong, In re Pilatich, In re Cortes, In Re Medina and In re O'Dell) on appeal but

declined to hold that "MERS would not be able to establish itself as a real party in interest had it

identified the holder of the note or provided sufficient evidence of the source of its authority."

***Cervantes v. Countrywide Home Loans Inc. (United States District Court, District of Arizona)***

On September 24, 2009, the U.S. District Court for the District of Arizona, in Cervantes v.

Countrywide Home Loans, Inc., et al., dismissed all federal and state law claims made by three

borrowers in a complaint filed against a group of defendants that included MERS. The court

discussed whether MERS was a proper beneficiary but only in the context of whether its involvement

constituted the tort of fraud on the borrowers. The court found the mere use of MERS was not

common law fraud on the borrowers, finding that "Plaintiffs have failed to allege what effect, if any,

listing the MERS system as a 'sham' beneficiary on the deed of trust had upon their obligations as

borrowers."

The U.S. Court of Appeals for the Ninth Circuit affirmed the trial court's judgment in favor of

MERS in a published opinion filed on September 7, 2011. The Court ruled that a borrower had no

basis to challenge the standing of an entity like MERS. It also, however, drew attention to a legal

reference book's footnote that such a borrower still had a remedy by suing to have the trustee's sale

set aside.

***Mortgage Electronic Registration Systems, Inc. v. Revoredo, et al. (Florida Third District Court of
Appeals)***

Both the 3rd District Court of Appeals in Miami and the 2nd District Court of Appeals in

Lakeland held that MERS can foreclose. Senior Judge Alan R. Schwartz noted the decision was

based in part in the changes in finance and technology over time. "The problem arises from the

difficulty of attempting to shoehorn a modern innovative instrument of commerce into nomenclature

and legal categories which stem essentially from the medieval English land law," Schwartz wrote.

A related Florida case is BONY Mellon v. Pino. After homeowner Pino had established that bank paperwork was defective, BONY moved to dismiss its own suit, presumably intending to remedy the paperwork and then start a second suit for foreclosure, Florida being a judicial foreclosure state. Pino challenged the bank's right to dismiss its own suit in such a way. As the case neared a hearing at the Florida supreme court, the parties settled. Days later the bank recorded notice at the country recorder that Pino was now the free and clear owner of his house. In other words, the bank let go of its claim, presumably worth many thousands of dollars, to Pino's house, because bank attorneys believed they were likely to lose at the state supreme court, and thus establish a precedent that could cost them a lot of money. Avoiding the precedent was worth more than the lost money lent to Pino. In spite of the bank's action, the court decided to hear the matter to rule on the propriety of the banks "dismiss-fix-sue again" approach. (Brittany Davis, Miami Herald blog, May 10, 2012)

***Jewelean Jackson, et al. v. Mortgage Electronic Registration Systems, Inc. (Minnesota Supreme Court)***

On August 14, 2009, the Minnesota Supreme Court ruled that MERS could foreclose under state law as the mortgagee of record.

A class-action lawsuit was filed by homeowners in Delaware to hold MERS responsible for fraudulent fees on foreclosures filed by MERS.

Homeowners have argued in court that their homes could not be foreclosed because MERS deeds of trust were unlawful. In other cases, state appellate courts have held that MERS is permitted to foreclose mortgage liens when it is the holder of the note and mortgage.

***Landmark Nat'l Bank v. Kesler (Kansas Supreme Court)***

On August 28, 2009, the Kansas Supreme Court in Landmark National Bank v. Kesler, 2009 Kan. LEXIS 834 (Aug 28, 2009), issued a decision involving MERS that focused on finality of judgments. MERS's involvement with this case arose from the fact that the company did not receive notice of a foreclosure action even though MERS was the mortgagee of record on a junior lien. In the

opinion, the court noted that "[e]ven if MERS was technically entitled to notice and service in the initial foreclosure action—an issue that we do not decide at this time—we are not compelled to conclude that the trial court abused its discretion in denying the motions to vacate default judgment and require joinder of MERS...." The case did not affect MERS's standing to foreclose and the company is entitled to receive notice of legal actions when MERS is the mortgagee. The court concluded that MERS had not publicly recorded the chain of title with the relevant registers of deeds in counties across Kansas. The judges determined that a mortgage contract consists of two documents: a deed of trust (which secures the property as collateral) and the promissory note (which indents the borrower to the lender), and determined that "in the event that the mortgage loan somehow separates interests of the note and the deed of trust... with the deed of trust lying with some independent entity... the mortgage may become unenforceable."

On April 30, 2010, a Kansas appellate court in MERS, Inc. v. Graham, 44 Kan. App. 2d 547, 2010 WL 1873567, at **4-**5, interpreted Kesler to mean that MERS in fact does not have standing to foreclose on a mortgage in Kansas where there is no mention of MERS in the promissory note, MERS acts solely as a "nominee" for the lender, and there is no evidence that the promissory note has been assigned to MERS or that MERS otherwise possesses an interest in the promissory note.

**MERSCORP, Inc., RESPA Litigation (United States Court of Appeals for the Fifth Circuit)**

In 2008, the United States Court of Appeals for the Fifth Circuit dismissed a multi-district class action lawsuit against MERS. The plaintiffs alleged that a small fee charged by mortgage lenders, which was then paid to MERS, violated provisions in the Real Estate Settlement Procedures Act (RESPA). The plaintiffs also argued that MERS unfairly received business referrals from the mortgage lenders. However, the Circuit Judges held that "In exchange for the fee, MERS performed the service of being the permanent record mortgagee in the public land records..." Plaintiffs' complaint was dismissed by the appellate court for failure to state a claim under RESPA

*District of Columbia Attorney General's Enforcement Statement*

On October 27, 2010, DC Attorney General Peter Nickels issued a statement which concludes that "a foreclosing may not be commenced against a D.C. homeowner unless the security interest of the current noteholder is properly supported by public filings with the District's Recorder of Deeds." So in Nickels' view, subsequent transfers of the mortgage on MERS's records will not count unless they were also recorded in D.C.

*Gomes v. Countrywide Home Loans (California Court of Appeal for the Fourth Appellate District, Division One)*

On February 18, 2011, the California Court of Appeal for the Fourth Appellate District affirmed the sustaining of a demurrer without leave to amend. In an opinion by Justice Joan Irion, the court ruled in favor of MERS in two ways: (1) California's nonjudicial foreclosure statutes did not expressly or impliedly allow a lawsuit simply to determine whether the party initiating a foreclosure was authorized to do so; and (2) even if they did, the plaintiff consented to the use of MERS to initiate the foreclosure when he signed the deed of trust.Gomes expressly cited to and relied upon the state supreme court's 2010 decision in Lu v. Hawaiian Gardens Casino, Inc., which clarified that a certain conservative method of statutory analysis (first articulated by Associate Justice Frank K. Richardson in 1979 and adopted by a majority of the court in a 1988 opinion by Chief Justice Malcolm M. Lucas) applies to all California statutes, not just the California Insurance Code. Thus, if the California Legislature has not expressly written a cause of action into a statute, it simply does not exist. The Supreme Court of California denied Gomes's petition for review on May 18, 2011. Gomes' attorney then filed a petition for writ of certiorari in the U.S. Supreme Court in which he attempted to challenge MERS on vaguely articulated due process federal constitutional grounds not previously raised in the lower courts. However, he failed to challenge the constitutionality of the California rule for finding an implied cause of action, which would likely have failed anyway, as the federal rule for

finding an implied cause of action is nearly identical. The high court denied the petition on October

11, 2011.

***In re Agard (U.S. Bankruptcy Court, Eastern District of New York)***

On February 10, 2011, the U.S. Bankruptcy Court for the Eastern District of New York

considered a motion for relief from the bankruptcy stay brought by U.S. Bank as the trustee of a

securitization trust. U.S. Bank claimed the right to foreclose on the debtor's mortgage in part because

of purported assignment of the mortgage from MERS. The court found itself constrained by the

Rooker-Feldman doctrine to give effect to a prior state-court judgment of foreclosure, but went on to

consider several arguments MERS advanced about its legal status and authority, noting that it had

held off on deciding dozens of additional cases until those matters were clarified. The court found

that MERS had no power as an agent to assign the mortgage under its rules, its membership

agreement, or the terms of the mortgage itself. The court also found that MERS had no power as the

mortgagee of record to assign the mortgage: "MERS's position that that it can be both the mortgagee

and an agent of the mortgagee is absurd, at best."

The court observed, "MERS and its partners made the decision to create and operate under a

business model that was designed large part to avoid the requirements of the traditional mortgage

recording process. The Court does not accept the argument that because MERS may be involved with

50% of all residential mortgages in the country, that is reason enough for this Court to turn a blind

eye to the fact that this process does not comply with the law."

***Residential Funding v. Saurman (Michigan Supreme Court)***

In April 2011, in Residential Funding v. Saurman, the Michigan Court of Appeals decided

two consolidated cases holding that MERS did not have standing to foreclose non-judicially pursuant

to MCL 600.3204(1)(d) because it did not actually own any interest in the debt. The Michigan

Supreme Court reversed the decision in an order November 16, 2011, finding that MERS is the

owner of an interest in the mortgage because "[MERS'] contractual obligations as mortgagee were dependent upon whether the mortgagor met the obligation to pay the indebtedness which the mortgage secured." However, the court clarified that MERS's status as an "owner of an interest in the indebtedness" does not equate to an ownership interest in the note."

On November 16, 2011, the Michigan Supreme Court, understanding the urgency and potential fallout of this matter, issued a peremptory order, in lieu of granting the appeal, and reversed the Court of Appeals judgment. (Residential Funding Co, LLC v Saurman, 2011 WL 5588929 (Mich, November 1, 2011). The court agreed with the dissenting Court of Appeals opinion, "pursuant to MCL 600.3204(1)(d), Mortgage Electronic Registration System (MERS) is the 'owner . . . of an interest in the indebtedness secured by the mortgage at issue in each of these consolidated cases' because '[MERS] contractual obligations as the mortgagee were dependent upon whether the mortgagor met the obligation to pay the indebtedness which the mortgage secured.'" The Court clarified that "MERS status as an 'owner of an interest in the indebtedness' does not equate to an ownership interest in the note. Rather, as a record-holder of the mortgage, MERS owned a security lien on the property, the continued existence of which was contingent upon the satisfaction of the indebtedness." This interest in the indebtedness . . . authorized MERS to foreclosure by advertisement under MCL 600.3204(1)(d)." (emphasis added).

The court's interpreted MCL 600.3204(1) as inclusive rather than exclusive. The court held those with an "interest in the indebtedness" includes mortgagees of record (such as MERS) and constitutes a category of parties entitled to foreclose by advertisement, along with those who "own the indebtedness" and those who "act as the servicing agent of the mortgage."

### Calvo v. HSBC (Court of Appeals of California, Second District, Division Eight)

On September 12, 2011, the California Court of Appeal for the Second District said the complaint (an alleged violation of Section 2932.5 of the California Code which requires the assignee

of a mortgagee to record an assignment before exercising a power to sell real property) was irrelevant as it applied only to mortgages, not to deeds of trust.

### Robinson v. Countrywide (Court of Appeals of California, Fourth District)

On September 12, the Fourth District Court citing its own May decision in Gomes v. Countrywide, stated that "the statutory scheme...does not provide for a preemptive suit challenging standing. Consequently, plaintiffs' claims for damages for wrongful initiation of foreclosure and for declaratory relief based on plaintiffs' interpretation of section 2924, subdivision (a), do not state a cause of action as a matter of law."

### Bain vs. Metropolitan Mortgage Group, Inc. (Washington Supreme Court)

In March 2012, Kristin Bain of Tukwila, WA filed suit against MERS (and a subsidiary) for foreclosing on her house without even disclosing the actual owner of her mortgage.

In August 2012, the Washington Supreme Court ruled with Bain, saying that MERS was not a lawful beneficiary of her deed and did not have the right to appoint trustees. The decision states: "A plain reading of the statute leads us to conclude that only the actual holder of the promissory note or other instrument evidencing the obligation may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property. Simply put, if MERS does not hold the note, it is not a lawful beneficiary".

### Electronic signatures and notarizations

Because the MERS system is electronic, it depends on the electronic storage and transmission of legal documents. On the question of notarization of electronic signatures and the honoring of notarized signatures across state lines, the US House of Representatives had passed bills to legalize these steps, and in 2010 the US Senate passed the legislation without debate. However, President Barack Obama publicly opposed the legislation on October 7, 2010. As a result, the bill died, and

state laws govern whether electronic signatures can be notarized or whether a notarized signature in one state must be accepted in another.

***Controversy***

Mortgage Electronic Registration Systems, Inc. has generated much debate, controversy, and criticism among litigators and academics in "some of the most widely read law review articles of the past few years." Dustin A. Zacks, for example, criticized Mortgage Electronic Registration Systems, Inc. for taking directly inconsistent positions in various courts around the country. Zacks' article found favor with the Bain Court which cited him for the proposition that "MERS's officers often issue assignments without verifying the underlying information, which has resulted in incorrect or fraudulent transfers." Professor Christopher Peterson has similarly argued that MERS is disingenuous in simultaneously claiming to be the mortgagee and the nominee/agent of the lender or trustee. Peterson likened this alleged duplicity to being akin to the two-faced Roman God Janus, while Zacks compared Mortgage Electronic Registration Systems, Inc. to a "creature more akin to a many-tentacled squid." Peterson's articles on MERS, which also criticize MERS for its allegedly harmful effect on the integrity and transparency of public recording, have been cited by countless anti-MERS litigants and in decisions both adverse and favorable to MERS.

Other academics have criticized Mortgage Electronic Registration Systems, Inc. on the grounds that its nominal ownership of millions of home loans poses a disastrous risk for mortgage investors should Mortgage Electronic Registration Systems, Inc. ever declare bankruptcy. Such a bankruptcy could mean that mortgages would "pass into the company's bankruptcy estate and become available to satisfy creditors' claims." One law professor even suggested scrapping the MERS system entirely, replacing it with an entirely new national recording system.

///

///

Respectfully submitted,,

Dona D Stiles

10/16/2017

Recording Requested by and
When Recorded Return to:
**FIRST AMERICAN TITLE INS. CO.**
*LOSS MITIGATION TITLE SERVICES*
P.O. BOX 27670
SANTA ANA, CA 92799

ATTENTION: LMTS

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

█████████████ 45.00
pm 04/06/11

7 Sec4 M15   7
0.00 0.00 0.00 0.00 18.00 0.00 0.00 21.00

THIS SPACE FOR RECORDER'S USE ONLY

## LOAN MODIFICATION AGREEMENT

*STATE:*     *CA*
*COUNTY:*    *ORANGE*

*ORDER:*     ███████





Document Number: ████████████ 2 Page: 1 of 8

# EXHIBIT A

When recorded mail to:
First American Title
Loss Mitigation Title Services 75.26
P.O. Box 27670
Santa Ana, CA  92799
RE: STILES - MOD REC SVC

Loan #: ███████

----------------------------FOR INTERNAL USE ONLY----------------------------

## LOAN MODIFICATION AGREEMENT
### ( Fixed Interest Rate- Balloon Loan-Recorded)

This Loan Modification Agreement ("Agreement"), made this 29th day of December 2010, between DONA  STILES,  and BAC Home Loans Servicing, LP (Lender), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the Security Instrument), dated the 11th day of July 2005 and in the amount of $820,000.00 and recorded on the 7/15/2005 in Book No. none, Page No. None as Document No. 2005000549926 in the Official Records of ORANGE County, in the State of  CALIFORNIA , and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as in the 'Property', located at 3891 FINISTERRE DRIVE, HUNTINGTON BEACH, CA  92649.

Please See Attached Exhibit (A) , ( B)

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1   As of the 1st day of February 2011, the amount payable under the Note or Security Instrument (the "Unpaid Principal Balance") Is U.S. $910,678.30 consisting of the amount(s) loaned to the Borrower by the Lender which may include, are not limited to, any past due principal payments, interest , fees and/or costs capitalized to date.

2   The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  Interest will be charged on the Unpaid Principal Balance at the yearly rate of (See Attached Addendum) from the 1st day of January 2011. The Borrower promises to make monthly payments of principal and interest of U.S. (See Attached Addendum) beginning on the 1st day of February 2011,  and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on the 1st day of August 2035 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

**Borrower understand that my monthly principal and interest payment for the interest Bearing Principal Balance is being amortized over 480 months from the date of my first modification payment. However, the scheduled maturity date of my loan will remain unchanged. This means that even if I make all of the scheduled payments under this modification on time I will have a remaining balance at the maturity of my loan which is called a balloon payment, and I will need to make arrangements to pay this remaining balance.**

3   The Borrower will make such payments at PO Box 515503, Los Angeles, CA 90051-6803 or at such other place as the Lender may require.

4   Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

5   In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as Documents. Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

6   Acceptance below is based upon the following corrections that shall not waive any other Terms and Conditions:
    A.  BofA will write off all obligations regarding my 2nd Trust Deed Loan #168707809 and Approximate $275,000 for Countrywide FSB Instrument # 2007-000353108, without recourse.
    B.  BofA Corporation will provide a satisfactory response to my Qualified Written Request under separate cover addressed to President, Brian T. Moynihan.
    C.  BofA Home Loans will justify its representation of current real estate market values at $910,678.30 vs. local BPO at $770,000. (Expert witnesses will testify that appraisal fraud and unfair business practices may have occurred herein.)
    D.  BofA/Countrywide and New York Bank Mellon will provide (relative to the aforementioned loans) a detailed account history of funding and regular cash flows into RMBS Bond Security Trusts and CDOs have been paid in accordance with their original SEC Prospectus and PSA filings.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing

_____                          ___1/7/11___
DONA STILES                                                 Date

STATE OF  California
County OF  Orange
On  Jan. 1, 2011  Before me,  Asia J. Young  Notary Public, personally appeared
Dona Stiles
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) (s) on the instrument the person(s) or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.        Signature _____

See All purposes  Document Number: ████████        Page: 2 of 8

# EXHIBIT A

Do Not Write Below This Line.

THIS SECTION IS FOR INTERNAL BANK OF AMERICA HOME LOANS SERVICING, LP USE ONLY

By:

Cardina Catalan

Dated: 3/2/11

STATE OF

County OF

On _____ Before me, _____ Notary Public, personally appear

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.
Signature

**EXHIBIT A**

BAC Home Loans Servicing, LP
Attn Home Retention Division: CA6-919-01-43
400 National Way
Simi Valley, CA 93065

Loan #: ▉▉▉▉▉▉▉

# Acknowledgment

State of California

County of _Orange_

On _Jan. 7, 2011_ before me _Asia J. Young (Notary Public)_
(insert name & title of the officer)

personally appeared _Dona Stiles_

who proved to me on the basis of satisfactory evidence to be person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____ (Seal)

ASIA J. YOUNG
COMM. #1822992
NOTARY PUBLIC · CALIFORNIA
COUNTY OF ORANGE
My Comm. Expires November 16, 2012

BA2 Loan# ▉▉▉▉▉▉

# EXHIBIT A

## ACKNOWLEDGMENT

State of California
County of _____Ventura_____)

On _03/02/2011_____ before me, _Genevieve A. Hartney, Notary Public_
                                                        (insert name and title of the officer)

personally appeared ___Carolina Catalan, Officer Mortgage Servicing Unit Manager____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____    (Seal)

GENEVIEVE A. HARTNEY
COMM. # 1913599
NOTARY PUBLIC · CALIFORNIA
VENTURA COUNTY
My Commission Expires
November 16, 2014

Document Number: ██████████  Page: 5 of 8

# EXHIBIT A

JUL. 8.2005    1:13PM          NO.167    P.15

ORDER NO. ████████

EXHIBIT "A"
(LEGAL DESCRIPTION)

LOT 67 OF TRACT 5132, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 182, PAGES 14, 15, 16, 17, 18, 19 AND 20 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBONS, BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

Page 4

Document Number: ████████  Page: 6 of 8

**EXHIBIT A**

Date:            December 29, 2010          *Exhibit(B)*
Loan#                                                      Please Return to:
Mortgagor:       DONA STILES
                                                          Attn Home Retention Division: CA6-919-01-43
                                                          400 National Way
                                                          Simi Valley, CA 93065

Property Address:   3891 FINISTERRE DRIVE
                    HUNTINGTON BEACH, CA 92649

## STEP RATE LOAN MODIFICATION ADDENDUM
## TO LOAN MODIFICATION AGREEMENT

The Step Rate Loan Modification Agreement Addendum (the "Addendum") is made this 29th day of December 2010, and is incorporated into and shall be deemed a part of that certain Loan Modification Agreement of even date herewith (the "Agreement") between DONA STILES and BAC Home Loans Servicing, LP ("Lender"), which agreement amends and supplements that certain Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument").

### THIS ADDENDUM CONTAINS PROVISIONS PROVIDING FOR SCHEDULED INCREASES IN THE INTEREST RATE AND MONTHLY PAYMENT

In consideration of the mutual promises and agreements exchanged and for good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Agreement, Security Instrument or the promissory note (the "Note"), except as specifically provided for herein):

1. **Interest Rate and Monthly Payment Increases.**

Notwithstanding anything to the contrary contained in the Note or referenced in the Agreement, the monthly principal and interest payment shall be calculated as follows:

The interest rate used to determine the monthly Principal and Interest payment shall change on the 1st day of January 2011 and on that day of every twelfth month thereafter (each such date, a "Change Date"), with the last such change date occurring on the 1st day of January 2019.

a) The First Change Date shall occur on the 1st day of January 2011 at which time the interest rate shall be 3.000%. The monthly Principal and Interest shall be $3,280.09 and shall be due and payable on 1st day of February 2011 and continuing thereafter on the same day of each succeeding month until 1st day of January 2016.

b) The Second Change Date shall occur on the 1st day of January 2016 at which time the interest rate shall be 4.000%. The monthly Principal and Interest shall be $3,750.77 and shall be due and payable on 1st day of February 2016 and continuing thereafter on the same day of each succeeding month until 1st day of January 2017.

c) The Third Change Date shall occur on the 1st day of January 2017 at which time the interest rate shall be 5.000%. The monthly Principal and Interest shall be $4,264.14 and shall be due and payable on 1st day of February 2017 and continuing thereafter on the same day of each succeeding month until 1st day of January 2018.

d) The Fourth Change Date shall occur on the 1st day of January 2018 at which time the interest rate shall be 5.625%. The monthly Principal and Interest shall be $4,693.60 and shall be due and payable on 1st day of February 2018 and continuing thereafter on the same day of each succeeding month until 1st day of January 2019.

Thereafter, monthly principal and interest payment shall remain the same until such time as the principal and interest due under the Note are paid in full. If on 1st day of August 2035 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by the Agreement and this Addendum, the Borrower shall pay these amounts in full on the Maturity Date.

BAC Home Loans Servicing, LP

By _____          _____

3/2/11                                      DONA STILES

# EXHIBIT A

Certified Copy of document number 20110001755 2

THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: 8/17/2016

CERTIFICATION FEE: 8.00

COUNTY CLERK-RECORDER

*Hugh Nguyen*

ORANGE COUNTY
STATE OF CALIFORNIA

Document Number: ███████████ Page: 8 of 8

# EXHIBIT A



06/02/2014

DONA STILES



Loan Number:  ▮▮▮▮▮▮▮▮
Property Address:  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### NOTICE OF DEFAULT AND INTENT TO ACCELERATE

Dear DONA STILES:

This letter is formal notice by Bayview Loan Servicing, LLC (herein as "BLS") that you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to pay the amounts due. As of 06/02/2014, your home loan is 213 days in default.

If you have questions about any of the items contained in this notice, or need any additional information, please contact, Loss Mitigation Specialist at 1-877-205-9958, whom we have designated as your single point of contact.

Under California State Law, we are required to send you this notice to inform you that you are at risk of losing your home. The following is a breakdown of what is due as of the date of this letter. The loan is due for 11/01/2013 and subsequent payments, plus late charges, fees and costs. As of today, the total delinquency and reinstatement amount is $32,039.07, which consists of the following:

| | | |
|---|---|---|
| Next Payment Due Date: | | 11/01/2013 |
| Total Monthly Payments Due: | | $31,703.32 |
| Late Charges: | | $652.00 |
| Other Charges: | Uncollected NSF Fees: | $0.00 |
| | Other Fees: | $0.00 |
| | Corporate Advance Balance: | $73.00 |
| | Unapplied Balance: | ($389.25) |

**TOTAL YOU MUST PAY TO CURE DEFAULT:**                    **$32,039.07**

**It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that BLS paid on your behalf or advanced to your account.**

You can cure this default by making the payment of $32,039.07 by 07/02/2014. Additional amounts may become due under your Note and Security Instrument after 07/02/2014. For the exact amount you must pay to bring your loan current, please contact our office at 1-800-771-0299.



BR003
Page 1 of 3



Please include your loan number and property address with your payment and send to:

> Bayview Loan Servicing, LLC
> 4425 Ponce De Leon Blvd, 5th Floor
> Miami, FL 33146

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, BLS offers consumer assistance programs designed to help resolve delinquencies and avoid FORECLOSURE. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternative. If you would like to learn more about these programs, you may contact the Loss Mitigation Department at 1-877-205-9958, 9:00 a.m. - 6:00 p.m., Monday - Friday, Eastern Time. WE ARE VERY INTERESTED IN ASSISTING YOU.

If you have not cured the default by 07/02/2014, Bayview Loan Servicing, LLC will accelerate the maturity date of the Note and declare all outstanding amounts under the Note immediately due. Your property that is collateral for the Note may then be scheduled for foreclosure and sale in accordance with the terms of the Deed of Trust/Mortgage and applicable state laws.

You have the right to reinstate the loan after acceleration, and to bring a court action to assert the non-existence of a default or any other defense to acceleration or foreclosure sale. Failure to respond to this letter may result in the loss of your property. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address and telephone number.

You have the right to request in writing a copy of the following:
- A copy of your promissory note or other evidence of indebtedness
- A copy of your deed of trust or mortgage
- A copy of any assignment, if applicable, of your mortgage or deed of trust to demonstrate Bayview's right to foreclose
- A copy of your payment history since your loan was less than 60 days past due

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 a.m. or after 9:00 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP(4357) or www.ftc.gov.

**Attention Servicemembers and dependents**: The Federal Servicemembers' Civil Relief Act (50 U.S.C. Sec. 501 et seq) and certain state laws provide important protections for you, including reductions to interest rate, prohibiting foreclosure under most circumstances, and servicemember counseling available at agencies such as Military One and Armed Forces Legal Assistances. If you are currently in the military service, or have been within the last twelve (12) months, **AND** joined after signing the Note and Security Instrument now in default,



please notify BLS immediately. When contacting BLS as to your military service, you must provide positive proof as to your military status. If you do not provide this information, it will be assumed that you are not entitled to protection under the above-mentioned Act.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home. You may contact a government approved housing counseling agency which provides free or low-cost housing counseling. You should consider contacting one of these agencies immediately. These agencies specialize in helping homeowners who are facing financial difficulty. Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance. For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies, please call 1-800-569-4287 or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

You may also contact the Homeownership Preservation Foundation's Hope hotline at 1-888-995-HOPE(4673). If you wish, you may also contact us directly at 1-800-771-0299 and ask to discuss possible options.

This matter is very important. Please give it your immediate attention.

Sincerely,

Bayview Loan Servicing, LLC
4425 Ponce De Leon Blvd, 5th Floor
Miami, FL 33146
1-800-771-0299

FEDERAL LAW REQUIRES US TO ADVISE YOU THAT BAYVIEW LOAN SERVICING, LLC IS A DEBT COLLECTOR AND THAT THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO THE AUTOMATIC STAY IN A BANKRUPTCY PROCEEDING, THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT AN INDEBTEDNESS AS YOUR PERSONAL OBLIGATION. IF YOU ARE REPRESENTED BY AN ATTORNEY, PLEASE PROVIDE US WITH THE ATTORNEY'S NAME, ADDRESS AND TELEPHONE NUMBER.



BR003
Page 3 of 3



Triplicate Original 3 of 3
Non-Negotiable, Non-Transferable

**NOTICE OF DISPUTE OF DEBT**

In Re: BAYVIEW LOAN SERVICING, LLC, BANK OF AMERICA, NA., BANK OF AMERICA
CORPORATION, BANK OF AMERICA HOME LOANS, BAC HOME LOANS SERVICING, LP,
BANK OF AMERICA, et al, COUNTRYWIDE HOME LOANS, INC. COUNTRYWIDE FINANCIAL
CORPORATION, COUNTRYWIDE HOME LOANS CHL, COUNTRYWIDE BK FSB,
COUNTRYWIDE HOME LOANS, et al, BANK OF NEW YORK, BANK OF NEW YORK MELLON
AS TRUSTEE FOR CWMBS-2005 PASS-THROUGH SERIES, or something similar, et al; and
DOES 1-1000:

Applicable to All Successors and/or Assigns
_____

Notice to the agent is notice to the principal and notice to the principal is notice to the agent

June 25, 2014

Sent by: USPS CERTIFIED MAIL Return Receipt # 7007 0710 0004 0414 2551
In response to your unsigned, certified Debt Collection letter with no postmark, dated June 2, 2014,
(received June 5, 2014) and mailed by USPS mail from Zipcode 92589 (Temecula, CA),
identifying yourself as a Debt Collector Attempting to Collect a Debt

Entitled:  "**NOTICE OF DEFAULT AND INTENT TO ACCELERATE**"

In Re: **Bayview Loan Servicing, LLC:**

RE: 

TO:   **Bayview Loan Servicing, LLC – Account #:** ▮▮▮▮▮
      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
      (No Mail received at property address.)

Dear Bayview Loan Servicing, LLC, et al:

Under the Fair Debt Collections Practices Act (15 USC 1692g) I am **hereby disputing the alleged-
debt in its entirety based upon, but not limited to, the following:**

Please take notice as follows:

1. Authority: That this **Notice of Dispute of Debt** ("Notice of Dispute") is sent to you pursuant to
Title 15, United States Code Annotated ("U.S.C.A") § 1692 et seq, known as the Fair Debt
Collection Practices Act ("FDCPA"), the legislative purpose of which is to protect consumers from
abusive, deceptive, and unfair debt collection practices by debt collectors;

2. Your debt collection letter: That I have received and read your debt collection letter referenced
above, identifying yourself as Bayview Loan Servicing, LLC, as debt collectors, (Exhibit A - copy of
debt collection letter), wherein you allege that I have a debt obligation to the alleged creditor
referenced above;

3. Purpose of this notice: That the purpose of this Notice of Dispute is to assert my rights in debt



collection under FDCPA § 1692(g)(b) without delay and within thirty (30) days of my receipt, on 6/5/2014, of your aforesaid debt collection letter;

4. Alleged-debt disputed: **That I hereby dispute the validity of the alleged-debt in its entirety.**

(a) It is my understanding that the alleged-debt may have already been paid in full due to it being securitized, converted to stock, and traded/sold under a CWMBS Loan Pass-Through Trust Series or something similar (hereinafter, "Trust"); in which case, **the original creditor was paid in full** and the debt has been satisfied.

(b) Under the original Deed of Trust, the original lender is COUNTRYWIDE BK FSB. There has been no valid assignment and chain of title from the original lender to the Trust recorded in the county recorder's office, as required by recording law in the State of California. Therefore, I dispute that the Trust has a valid debt claim.

(c) Under the original Deed of Trust, the original lender is COUNTRYWIDE BK FSB. There has been no valid assignment and chain of title from the original lender to BAYVIEW LOAN SERVICING, LLC. recorded in the county recorder's office, as required by recording law in the State of California. Therefore, I dispute that BAYVIEW LOAN SERVICING, LLC. has a valid debt claim.

(d) Under the original Deed of Trust, the original lender is COUNTRYWIDE BK FSB. There has been no valid assignment and chain of title from BANK OF AMERICA, N.A. to Bayview Loan Servicing, LLC recorded in the county recorder's office, as required by recording law in the State of California. Therefore, I dispute that Bayview Loan Servicing, LLC has a valid debt claim.

Therefore, it is demanded that you provide **proof of the chain of title** from the original lender to the Trust, or similar entity, and/or BANK OF AMERICA, N.A. and/or Bayview Loan Servicing, LLC, and/or to your accomplices, successors and assigns, through the production of a CURRENT certified copy of the True wet-ink original promissory note through named endorsements as governed under UCC Article 3 § 3-205.

Please be advised that under the Massachusetts Supreme Court in re: U.S. Bank v. Ibanez that a blank assignment is an unacceptable proof of assignment in the event of a foreclosure/Trustee sale.

Please provide a written affidavit **under penalty of perjury from someone - a natural person, who has first-hand knowledge of the facts** that stipulates the following:

   a.) That he/she has personal, first-hand knowledge, and personally witnessed allege-Debtor signing his/her signature on the alleged-debt document creating an obligation to/with your company; and;
   b.) That the alleged-debt is valid and no discharge/write-downs/setoffs occurred on this alleged-debt.
   c.) That no tax credit was received for the discharge (if any) of alleged-debt by any party.
   d.) That the alleged-debt has not been paid in full when loan was securitized, and/or traded.
   e.) That the alleged-debt has not been paid in full through credit swaps, tradeouts, or similar.
   f.) That the alleged-debt has not been paid in full or satisfied through insurance payouts or something similar.

Please provide written proof from the original lender or Trust, or similar entity, that includes the specific loan number that gives your company the authority to collect the allege-debt on their behalf.

5. Verified documentary evidence requested: That I hereby request you provide me with the following verified (sworn to by affidavit) documentary evidence in substantiation of the alleged-debt claimed by the alleged-creditor referenced in your debt collection letter (see Exhibit A);

**EXHIBIT C**

(a) Proof of authority: Please provide me with verified (sworn to by affidavit) proof of your authority to represent the alleged-creditor in this instant matter;

(b) Real party in interest: Please verify who the real party in interest is in this debt collection matter;

(c) Alleged original creditor. Please provide me with the name and address of the alleged original creditor if different from the alleged creditor identified in your above mentioned debt collection letter.

(d) Alleged original agreement: Please provide me with a verified (sworn to by affidavit) copy, both front and back, of the original signed, wet-ink agreement and any other alleged original security instruments in their entirety, including the allonge, affixed to the original alleged agreement for endorsements. Said affidavit is to be sworn to be true, correct, complete, and not misleading, by a properly identified and authorized officer of the alleged-creditor, who states that he or she has personal knowledge (Federal Rules of Evidence ["FRE"] Rule 602) of the validity of said alleged original document(s).

(i) Inspection of document(s). Please provide me with the date, time, and place convenient to Huntington Beach, California, that I can personally inspect the above alleged original agreement and any other alleged original security instruments in their entirety relevant to the above alleged-debt.

(ii) Custodian of document(s). Please provide me with the name, title, and address of the natural person custodian of the alleged original wet-ink signed agreement and of any other alleged original security instruments.

(iii) Address of physical location of document(s). Please provide me with the address of the physical location of the alleged original agreement and any other alleged original security instruments if different from "(ii)" above.

(e) **Holder in due course.** Please provide me with verified (sworn to by affidavit) evidence that the alleged-creditor is the secured party in the instant matter, i.e., holder in due course, and has a perfected security interest in the aforesaid alleged agreement and alleged-debt;

(f) **Proof of Value Given**: Please provide me with verified (sworn to by affidavit) copies, both front and back, of all documents and records with respect to the aforesaid alleged agreement and alleged-debt from the beginning, including but not limited to, any and all lender issued cancelled certified checks, cashiers' checks, money equivalents or similar instruments, identified as or evidencing assets provided by the alleged-creditor and/or the alleged original creditor to me and indorsed by me;

(g) Deposit slip and cancelled check: Please provide me with a verified (sworn to by affidavit) copy of the deposit slip for the deposit of my alleged agreement in its entirety by the alleged-creditor associated with the above alleged-account/file number, and a verified copy of the cancelled check issued by the alleged-creditor as payor in payment for my alleged agreement in its entirety and any other alleged-related security instruments;

(h) Affidavit of debt & damages: Please provide me with an affidavit of debt and damages incurred, sworn to be true, correct, complete, and not misleading, by a properly identified and authorized officer of the alleged-creditor, hereinafter "affiant," upon his or her personal knowledge (FRE Rule 602) stating:

(i) that the alleged-creditor is, indeed, the secured party and holder in due course of the aforesaid alleged original agreement in issue and has an enforceable perfected security interest therein pursuant to and in compliance with the Uniform Commercial Code ("U.C.C.") Section 9-203, Section 9-204(1), and Section 9-305, or equivalent sections of the Commercial Code of California;



(ii) that the alleged-creditor provided consideration to me, the alleged-debtor, from the assets they had on hand before the alleged-credit was made, and incurred a financial loss under the full and complete alleged original agreement and alleged-debt, and state each and every loss that the alleged-creditor has incurred to date under the alleged-debt in issue; and

(iii) that affiant has personal knowledge (FRE Rule 602) regarding the facts of the alleged-debt and is the original custodian of the books of entry, or directly supervises said original custodian of the records.

(j) Bookkeeping journal / account ledger entries: Please provide me with a verified (sworn to by affidavit) copy of the complete set of original bookkeeping journal / account ledger entries associated with my alleged-agreement and alleged file/account number using Generally Accepted Accounting Principles per 12 U.S.C. § 1831n, showing all debits and credits and identifying the source(s) and amount of the credit funds/assets; Note: The verifying affidavit of journal / account ledger bookkeeping entries is to be completed by the original custodian of the books and records, sworn to be true, correct, complete, and not misleading. Further, said affidavit shall contain positive identification of the custodian, and state that he or she has personal knowledge (FRE Rule 602) of said entries.

(k) Assignment contract: If applicable, please provide me with verified (sworn to by affidavit) proof of an assignment contract in its entirety of the alleged original agreement and the alleged-debt in issue from an alleged original creditor, as assignor, to the alleged- creditor, as assignee.

(l) Proof of authority: Please provide me with a verified (sworn to by affidavit) copy of the contract your firm has with the alleged original creditor which authorizes your firm to engage in collection activities on their behalf against the above alleged-account, and naming you as an authorized collection agent / claims adjuster.

(m) Certification of authority: Please provide me with a verified (sworn to by affidavit) certificate of authority from the State of California authorizing your law firm to transact business and debt-collector activities in the state of California and a photocopy of your California State Department of Commerce and Insurance certificate.

(n) Form 1035: Please provide me with Department of the Treasury Form 1035 Custodian of Documents attached or associated with my alleged original agreement and /or the name and address of said custodian per "(b)(ii)" above;

(o) Form 1099: Please provide me with Department of the Treasury Form 1099 Original Issue Discount for each year the alleged-creditor was holder in possession of the alleged original agreement;

(p) Vendor sales slips/vouchers: Please provide me with verified (sworn to by affidavit) copies of all original sales slips/vouchers from all alleged vendors covering all alleged transactions in the above referenced file/account from its inception to date.

<u>Note</u>: **This Notice of Dispute is not a request for confirmation that you have mere photocopies of alleged documents.** I am requesting ONLY VERIFIED DOCUMENTARY EVIDENCE in validation of the alleged-debt pursuant to the FDCPA.

6. Declaration of facts: That a <u>Notice of Dispute of Debt</u> is attached hereto and is herein incorporated by reference. (Exhibit B - in support).

7. Warning: That all your communications and omissions will be made a part of and incorporated into any litigation arising from this matter. In the event of a future litigation, this letter will be used as an admission to the facts herein.



8. Reply deadline: Time is of the essence; therefore, I extend you ten (10) days from the date of your receipt of this Notice of Dispute to comply by sending verification of the alleged-debt as requested above per FDCPA mandates. Your failure to perform as herein requested will show bad faith. Furthermore, if you remain silent to this request or are unable to verify the alleged-debt as above, the legal concepts of estoppel by acquiescence and tacit admission will apply, whereby the alleged-debt will be admitted invalid, a nullity, and unenforceable, and thereby repudiated in its entirety ab initio. If you are unwilling or unable to provide proof and validation of the alleged-debt within the ten (10) days, then **you admit that the loan has been paid in full, and that the alleged-debt has been discharged and nothing is owed on alleged-loan**. This letter acts as a self executing confession that you are acting out of good faith and willingly providing false information and misrepresentation under 15 USC 1692e.

In the interim, you are prohibited from any debt-collection activity to the undersigned, except in writing, and only in regards to the matters herein expressed. All debt collection activity, including litigation, is to cease per FDCPA § 1692g(b): "... the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt...."

9. Mandatory reply: That all of the above demanded verified evidence, sworn to by a competent witness per FRE Rule 602, and any affidavit must be an attached affidavit, i.e., sworn to be "true, correct, complete, and not misleading," and, along with any challenge to the facts are to be sent to the undersigned, as indicated below, i.e., in care of the address below within the above-mentioned ten (10) days from your receipt of this Notice of Dispute.

Please do not send any reply correspondence to any other mail location except as follows:

Dona Stiles

██████████████████████

10. Exhibits: All exhibits attached to this Notice of Dispute are incorporated by reference herein.

Signed with reservation of all rights,

By: _____    Date: __6/25/17__
Dona Stiles

Enclosures: Exhibit A – Copy of debt collection letter, unsigned, undated, non-postmarked
        Exhibit B – Declaration of Facts - Affidavit

cc: Mary Jo White, Chair, Securities Exchange Commission
    Thomas J. Curry, Office of the Comptroller of the Currency
    Janet Yellen, Chair, Federal Reserve Board
    Edith Ramirez, Chair, Federal Trade Commission
    Eric J. Holder, Attorney General, US Department of Justice
    Anne M. Tompkins, US Attorney for the Western District of North Carolina
    Kamala Harris, Attorney General of California: DOB, CA
    Brian T. Moynihan, President,CEO, Bank of America, N.A.,et al
    Terrence P. Laughlin, Chief Risk Officer, Bank of America/Countrywide Mortgage-Backed
            Securities (Legacy Assets Servicing & Resolution)

# EXHIBIT C

**"EXHIBIT A"**

## Copy of Debt Collection Letter - "NOTICE OF DEFAULT AND INTENT TO ACCELERATE":

Four-Page Copy, Attached

**"EXHIBIT B"**

## DECLARATION OF FACTS - AFFIDAVIT:

I, Dona Stiles, hereby declare that I dispute the alleged-debt referenced in the attached and above-referenced document, in its entirety, and demand specific information enumerated in the letter above.

Sign: _____

Date: _____

**EXHIBIT C**

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

████████████████████ ▌9.00

███████████ 2:10 pm 04/22/16

47 406 S15 F13   1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

RECORDING REQUESTED BY:

Servicelink, a Black Knight company

AND WHEN RECORDED MAIL TO:

Seaside Trustee Inc.
P.O.Box 752377
Las Vegas, Nevada 89136

TS No.: ████████    Loan No.: ████████                    SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, DONA STILES, A SINGLE WOMAN was the original Trustor, RECONTRUST COMPANY N.A. was the original Trustee, and Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Countrywide Home Loans, Inc. its successors and assigns was the original Beneficiary under that certain Deed of Trust dated 7/11/2005 and recorded on 7/15/2005 as Instrument No. ████████, in book xx, page xx and Loan Modification Agreement recorded 4/6/11 as instr #████████ of Official Records of Orange County, California, and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes Seaside Trustee Inc. , as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 10/19/15

Bayview Loan Servicing, LLC. a Delaware Limited Liability Company as servicer for The Bank of New York Mellon fka The Bank of New York, as Trustee for The Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-HYB6, Mortgage Pass-Through Certificates Series 2005-HYB6

Randall Jackson

Assistant Vice President

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF PENNSYLVANIA
COUNTY OF MONTGOMERY
On 10.19.15_____ before me,_____ KELI D. SMITH ,_____ Notary Public,
Personally appeared, Randall Jackson_____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of PENNSYLVANIA_____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____, Notary Public
KELI D. SMITH

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KELI D. SMITH, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 9, 2017

EXHIBIT D

*Certified Copy of document number 201600017965*

THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: _8/17/2016_

CERTIFICATION FEE: _2.00_

COUNTY CLERK-RECORDER

Hugh Nguyen

ORANGE COUNTY
STATE OF CALIFORNIA

Document Number: ███████████ Page: 2 of 2

**EXHIBIT D**

ROBIN P. WRIGHT*
T. ROBERT FINLAY
JONATHAN M. ZAK++++
GWEN H. NIBAR
JONATHAN D. FINK
CHARLES C. MCKENNA
DANA JONATHON NITZ"
NICHOLAS G. HOOD
PATRICIA L. PENNY
RICHARD H. SIMPSON, Jr.
JAMES J. RAMOS
MAGDALENA D. KOZINSKA
NICHOLE L. GLOWIN
RUBY J. CHAVEZ
NICOLE S. DUNN
JOSHUA R. HERNANDEZ
KATHRYN A. MOOKER
TODD E. CHVAT
LUKASZ L. WOZNIAK""+"
BRADFORD E. KLEIN"""

RONALD M. ARLAS
MICHAEL J. GILLIGAN
CHELSEA A. CROWTON"
JOY R. THOMAS"""""
KIM R. LEPORE""
KRISTINA M. PELLETIER
JENNIFER A. BRADY
R. SAMUEL EHLERS"/+++
MICHAEL R. ASATOURIAN
RENEE M. PARKER""""
MARVIN B. ADVIENTO
RICHARD J. LEE+
BRIAN P. STEWART'+++
ROBERT A. OLSON
SCOTT S. POLLARD+++
OLIVIER J. LABARRE
JOAN C. SPAEDER-YOUNKIN
TALINE M. KESHISHIAN
"PATERNO C. JURANI
CORI B. JONES

""JAMIN S. NEIL
"SAMANTHA S. SMITH
SARAH GREENBERG
"CHRISTOPHER B. CORNELL
"INKU NAM
"SHADD A. WADE
"VICTORIA L. HIGHTOWER
""""NATALIE G. LEHMAN
"EDGAR C. SMITH
"REGINA A. HABERMAS
"CHRISTOPHER A.J. SWIFT
SHANNON C. WILLIAMS
IRYAN M. CARSON
KAELEE M. GIFFORD
"KRISTINE A. O'QUINN
""CHRISTINA V. MILLER
"SEAN R. PAYNE
"""MICHELLE A. MIERZWA
"ROCK K. JUNG
SHERI M. KANESAKA

ERIC S. POWERS
"/+++AARON D. LANCASTER
"/+++MICHAEL S. KELLEY
"/+++JAKE R. SPENCER
"J. STEPHEN DOLEMBO
JOHN J. DALLER

*Also Admitted in Nevada
"Admitted only in Nevada
"" Also Admitted in Arizona
""Also Admitted in Washington
++Also Admitted in Hawaii
+Licensed Patent Attorney
+Also Admitted in Utah
"Also Admitted in Oregon
"Admitted only in Arizona
"Also Admitted in New Mexico
""Also Admitted in Ohio
‡Admitted in Washington & Nevada
++++Of Counsel

**WRIGHTFINLAY&ZAK**ᴸᴸᴾ
ATTORNEYS AT LAW

Main Office
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Main Phone: (949) 477-5050
Email Fax: (949) 608-9142

www.wrightlegal.net

Direct Dial: (949) 477-1712
Email: jbrady@wrightlegal.net

August 15, 2016                                                                                              VIA U.S. MAIL

Dona Stiles
██████████████████████
██████████████████████

Re:     Case Name            :  Stiles, Dona
        Property Address      :  ████████████████████████

## RE:    MEET AND CONFER REQUEST – *Code of Civil Procedure* § 430.41(a)

Dear Ms. Stiles:

This firm has been retained to represent Defendants, Mortgage Electronic Registration Systems, Inc. ("MERS"), Seaside Trustee, Inc., and The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-HYB6, Mortgage Pass-Through Certificates, Series 2005-HYB6 ("BONYM") (collectively "Defendants"), in the above-captioned matter. Accordingly, please direct all future communications regarding my client's involvement in this matter to my attention.

We are writing you because, following our review of your Complaint in this matter, we have determined that Defendants will be responding with Demurrers. The California *Code of Civil Procedure* § 430.41(a) requires that: "Before filing a demurrer pursuant to this chapter, the demurring party shall meet and confer in person or by telephone with the party who filed the pleading that is subject to demurrer for the purpose of determining whether an agreement can be reached that would resolve the objections to be raised in the demurrer..." Section 430.41 (a)(1) provides "As part of the meet and confer process, the demurring party shall identify all of the specific causes of action that it believes are subject to demurrer and identify with legal support the basis of the deficiencies. The party who filed the complaint, cross-complaint, or answer shall provide legal support for its position that the pleading is legally sufficient or, in the alternative, how the complaint, cross-complaint, or answer could be amended to cure any legal insufficiency."

The statute requires an in person or telephonic conference. In an effort to make that conference more productive, I am sending this letter to you in advance so you can prepare for the conference.

Northern California Office
907 Sir Francis Drake Blvd.
Kentfield, CA 94904
Main Phone: (949) 477-5050
Main Fax: (949) 608-9142

Nevada Office
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117
Main Phone: (702) 475-7964
Main Fax: (702) 946-1345

Arizona Office
18437 N. Scottsdale Road, Ste. 300
Scottsdale, AZ 85254
Main Phone: (949) 477-5050

Washington Office
3600 15th Ave W, Suite 200
Seattle, WA 98119
Main Phone: (949) 477-5050


**EXHIBIT E**

Dona Stiles
August 15, 2016
Page 2

In compliance with that statute, please note the following: your Complaint attempts to allege causes of action for: 1) Violation of California Business & Professions Code, § 17200; 2) Breach of the Covenant of Good Faith and Fair dealing; 3) Injunctive Relief; 4) Violation of *Civil Code* § 1572; 5) Declaratory relief; 6) Set Aside Void Instruments; and 7) Violation of the California Homeowner's Bill of Rights ("HOBR"), all which are based upon on your unsupported contention that Defendants lacked the authority to commence foreclosure and that MERS lacked the authority to assign the loan. In addition, you also claim that Defendants are required to produce the original Note, an argument that has long since been rejected in California courts. *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 834; *I.E. Assocs. v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285; *Gomes v. Countrywide Home Loans, Inc.,* (2011) 192 Cal.App.4th 1149, 1154; *Debrunner v. Deutsche Bank Nat'l Trust Co.,* (2012) 204 Cal.App.4th 433, 440; *Civil Code* sections 2924, *et seq.* The Complaint also alleges a cause of action for violation of HOBR, specifically, dual tracking.

As an initial matter, when you executed the Deed of Trust you agreed that MERS would be the beneficiary. In fact, the DOT expressly states, "MERS...is a separate corporation that is acting solely as nominee for the *Lender and Lender's successors and assigns.* MERS is the beneficiary under this Security Instrument." See, DOT, pg., 2, paragraph (E). Further, MERS's involvement in the loan ceased after the execution of the Assignment. Thus, your claims now that MERS lacked the authority to formally transfer all beneficiary interest under the DOT to BONYM are without merit. Further, your theory that Defendants are required to produce the original note in order to initiate foreclosure has long since been rejected by California law. Non-judicial foreclosures in California are governed by comprehensive and exclusive regulations, *Civil Code* §§ 2924-2924i, which do not require that the note be in the possession of the party initiating the foreclosure.

With regard to your dual tracking claim [although you do not cite to the specific code section in the Complaint], we presume you mean *Civil Code* § 2923.6. Section 2923.6, which states in pertinent part: "[i]f a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." Here, your Complaint is devoid of any allegation regarding *any* loan modification application being pending at the time the Notice of Default and Notice of Trustee Sale were recorded, April 22, 2016 and August 18, 2016, respectively. Indeed, our Clients have no record of any loan modification application from you.

With respect to your other causes of action for: Violation of California Business & Professions Code, § 17200; Breach of the Covenant of Good Faith and Fair dealing; Injunctive Relief; Violation of *Civil Code* § 1572; Declaratory relief; Set Aside Void Instruments, all rise and fall based upon your allegations that MERS lacked the authority to formally transfer all beneficiary interest in the DOT to BONYM, as well as the holder of the note theory, which as discussed above, has been routinely rejected by the Courts in California. In addition, you failed to meet the requirements in each of the causes of action identified above, if not all.

In order to bring a claim under Section 17200, you must show either an 1) unlawful, unfair, or fraudulent business act or practice, or 2) unfair, deceptive, untrue, or misleading advertising, [*Stewart v. Life Ins. Co. of North America,* (E.D. Cal. 2005) 388 F. Supp. 2d 1138, 1143 (*citing Lippitt v. Raymond James Fin. Servs.,* (9th Cir. 2003) 340 F.3d 1033, 1043] and the claim must be supported by facts set forth with



EXHIBIT E

Dona Stiles
August 15, 2016
Page 3

reasonable particularity. *Khoury v. Maly's of California, Inc.,* (1993) 14 Cal. App. 4th 612, 619. A UCL claim is intended to address ongoing conduct; relief is not available for purely past conduct. *Mangini v. Aerojet-General Corp.,* (1991) 230 Cal. App. 3d 1125, 1155-56. Also, there is no vicarious liability in actions brought under the UCL; rather, a defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices. *Emery v. Visa Internat. Service Ass'n,* (2002) 95 Cal. App. 4th 952, 960; *accord Perfect 10, Inc. v. VISA Int'l Service Ass'n,* (9th Cir. 2007) 494 F.3d 788, 808-809. Here, you meet none of these requirements.

In order to state a proper claim for breach of the covenant, Plaintiff must allege that: (1) Plaintiff and Defendants entered into a contract; (2) Plaintiff did all or substantially all that the contract required her to do or that she was excused from having to do; (3) all conditions required for Defendants' performance had occurred; (4) Defendants unfairly interfered with Plaintiff's right to receive the benefits of the contract; and (5) Defendants' conduct harmed Plaintiff. *Guz v. Bechtel Nat'l, Inc.,* (2000) 24 Cal.4th 317, 349; *Villegas v. Wells Fargo Bank, N.A.* (N.D. Cal., 2012) 2012 WL 2931343, at *9. Significantly, the covenant of good faith and fair dealing does *not* impose substantive duties or limits on the contracting parties *beyond those incorporated in the specific terms of their agreement* and it cannot contradict the express terms of a contract. *Guz, supra,* at 349–350; *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.* (1992) 100 Cal.App.4th, 44, 55. Here, your Complaint fails to allege any facts to support your claim.

With respect to your Cause of Action for injunctive relief, Injunctive relief is a remedy and not, in itself, a cause of action. *Shell Oil v. Richter,* (1942) 52 Cal.App.2d 164, 168. A cause of action must exist before injunctive relief may be granted. *Id.* In order to state a cause of action for injunctive relief, Plaintiff must establish the probable likelihood that she will prevail on the merits of the underlying causes of action. *Langford v. Sup. Ct.,* (1987) 43 Cal.3d 21. Here, based upon the allegations in the Complaint, it is unlikely that you will prevail on your claims. Further, you are not entitled to Declaratory Relief. The declaratory relief claim is wholly derivative of the substantive law claims already asserted elsewhere in the Complaint. It adds nothing to the pleading and fails just as the substantive claims that follow it are deficient. Generally, an action in declaratory relief will not lie to determine an issue which is already the subject of an existing claim: "The declaratory relief statute should not be used for the purpose of anticipating and determining issues which can be determined in the main action. The object of the statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues." *California Ins. Guarantee Ass'n v. Superior Court,* (1991) 231 Cal. App. 3d 1617, 1623-24, citing *General of America Ins. Co. v. Lilly,* (1968) 258 Cal. App. 2d 465, 470.

Based on the above, the claims raised in the Complaint are all improper and fail against Defendants. There may be other minor issues to raise on demurrer, however, for the sake of the meet and confer, I have highlighted what I feel are the most important and fatal defects in the Complaint.

///

///

///



Dona Stiles
August 15, 2016
Page 4

Please contact me at jbrady@wrightlegal.net to advise me of your availability to hold the meet and confer to take place by no later than **August 26, 2016**, or I will have no alternative but to file the motions and advise the Court that you were unable to meet and confer despite my request.

Sincerely,

WRIGHT, FINLAY & ZAK, LLP

Jennifer A. Brady, Esq.
JAB:lm

**EXHIBIT E**

May 26, 2016                     USPS CERTIFIED MAIL Return Receipt # <u>7012 3050 0001 0254 7366</u>

Dona Stiles
██████████████████████

Notice to: SEASIDE TRUSTEE INC, and DOES 1-1000:

Applicable to All Successors and/or Assigns. Notice to the agent is notice to the principal, and notice to the principal is notice to the agent

Re:  "T.S. Number ██████████
Re:  "Loan Number: ██████
      (A truncated #██████ – an alleged loan # that does not belong to me,
      and to which I am not now nor have I ever been a party.

Re:  Alleged Debt identified as Loan #███████ and allegedly owed to: "Bayview Loan Servicing, LLC, a Delaware Limited Liability Company as servicer for Bank of New York Mellon fka The Bank of New York, as Trustee for The Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-HYB6, Mortgage Pass-Through Certificates, Series 2006-HYB6" (hereinafter, "BAYVIEW").

Re:  Real Property Address: ████████████████████████████9
Re:  APN:████████          (No mail at this address)

### NOTICE OF DISPUTE OF DEBT

This letter is in response to your unsigned Debt Collection letter, entitled **"DEBT VALIDATION NOTICE,"** dated April 26, 2016, postmarked April 27, 2016, and received via USPS mail on April 29, 2016, wherein Seaside Trustee Inc is identified as a debt collector for BAYVIEW.

Your letter included an enclosure titled **"NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST"** and signed by E. Bouche, Vice President, Seaside Trustee Inc.

Your letter included an enclosure titled **"DECLARATION OF MORTGAGE SERVICER PERSUANT TO CIVIL CODE §2923.55 (c),** that fraudulently certifies evidence regarding the alleged loan.

In your letter and enclosures you identify yourself as an agent for BAYVIEW. Furthermore, you identify yourself *both* as a "Debt Collector Attempting to Collect a Debt" *and* as "Trustee" of NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST,

Under the Fair Debt Collections Practices Act (15 USC § 1692g), **I hereby dispute the alleged debt in its entirety based upon, but not limited to, the following.**

I have no relationship to Loan #███████. I never applied for or received the alleged loan, and the claim is not valid. Your attempt to collect this invalid debt is harassment and fraud.

### EXHIBIT F

Please note: I have already successfully disputed the alleged debt: On June 2, 2014, BAYVIEW sent a "Debt Validation Letter" wherein they identified an alleged loan # ▦▦▦ to which I have never been a party, and of which I have no knowledge. In response, I sent BAYVIEW a timely **"Notice of Dispute of Debt"** and Qualified Written Request letter on June 25, 2014, by USPS Certified Return Receipt Mail #: <u>7007 0710 0004 0414 2551</u>. BAYVIEW never responded to the **Notice of Dispute of Debt,** and BAYVIEW never answered the Qualified Written Request.

<u>Please take notice as follows:</u>

**1. Authority:** That this Notice of Dispute of Debt ("Notice of Dispute") is sent to you pursuant to 15 USC § 1692 et seq, known as the Fair Debt Collection Practices Act ("FDCPA");

**2. Your debt collection letter:** That I have received and read your debt collection letter referenced above, identifying you as <u>Seaside Trustee Inc. and as a debt collector,</u> (Exhibit A - copy of debt collection letter), and wherein you allege that I have a debt obligation to BAYVIEW for a loan # ▦▦▦;

**3. Your notice of default and election to sell:** That I have received your NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST referenced above, (hereinafter, "Notice of Default & Election to Sell") identifying you as <u>Seaside Trustee Inc. and as Trustee,</u> (Exhibit B - copy of Notice of Default & Election to Sell).

Within this notice you allege, (a) that I have a debt obligation to BAYVIEW for a loan # ▦▦▦, and that Seaside Trustee Inc. is acting *"either as an 'original' Trustee, the duly appointed 'substituted' Trustee, or acting as an 'agent' for the Trustee or Beneficiary, to secure in favor of Mortgage Electronic Registration System, Inc. (MERS), acting solely for Countrywide Home Loans, Inc., its successors and assigns, as beneficiary."* (b) that you are acting as Trustee in Foreclosure for BAYVIEW for a loan # ▦▦▦, (c) that you have either filed and recorded, or caused the notice to be filed and recorded in the Orange County Recorder's office, and (d) that you intend to Foreclose on and Sell the real property for BAYVIEW.

However, as evidenced below, I have never had a debt obligation to BAYVIEW for loan # ▦▦▦.

**4. Purpose of this notice of dispute:** That the purpose of this Notice of Dispute is to assert my rights in debt collection under FDCPA § 1692(g)(b) without delay and within 30 days of my receipt on April 29, 2016, of your debt collection letter;

**5. Alleged debt disputed:** That I hereby dispute the validity of the alleged debt in its entirety.

**6. Alleged debt was already successfully disputed:** That, in June 2014, BAYVIEW sent a "Debt Validation Letter" wherein they identified an alleged loan # ▦▦▦ to which I have never been a party, and of which I have no knowledge. In response to BAYVIEW's letter, I sent BAYVIEW a **"Notice of Dispute of Debt"** and Qualified Written Request letter on June 25, 2014, by USPS Certified Return Receipt Mail #:  <u>7007 0710 0004 0414 2551</u>.

BAYVIEW never responded to the **Notice of Dispute of Debt.** BAYVIEW never answered the Qualified Written Request, and never identified the real party of interest, the True Holder in Due Course with a perfected security interest in the alleged debt. BAYVIEW could not provide a valid debt claim, validation of a true original promissory note through named endorsements, as governed under UCC Article 3 § 3-205. <u>BAYVIEW could not provide a valid explanation as to how they came up with the alleged loan number,</u> a valid assignment and chain of title from the original lender, proof of value given and money lent, an affidavit of debt and damages, nor a written affidavit from someone – a natural person – who has first-hand knowledge of the facts.

# EXHIBIT F

**7. Loan # is not mine:** That I hereby dispute the validity of the alleged loan # in its entirety. I am not a party to this loan #. I have never received a loan with this #. I have never signed for or applied for a loan with this #. I have no knowledge of this loan #. I have never received anything of value or any consideration whatsoever with this loan #. No one has ever presented valid evidence connecting my signature to this loan # despite my demand to BAYVIEW to do so. This loan # does not belong to me.

**8. Declaration of Mortgage Servicer Pursuant to Civil Code §2923.55 (c):** That I received your Declaration of Mortgage Servicer form as an enclosure with your debt collection letter. The Declaration identifies BAYVIEW as mortgage servicer and certifies fraudulent testimony about the alleged debt. The Declaration is signed and certified by Gregory Harrison, who is identified as an "authorized agent" or "employee" of BAYVIEW. Both BAYVIEW and Harrison have a significant financial motivation for providing the fraudulent testimony.

The testimony is an inaccurate, incomplete, self-serving assessment based only on omission of facts and hearsay. BAYVIEW as mortgage servicer uses this false testimony, via a willing agent, to preserve their self-interest, to substantiate an arbitrary, self-serving claim, and thereby arrives at the desired, self-serving conclusion. (Exhibit C – copy of Declaration of Mortgage Servicer Pursuant to Civil Code §2923.55 (c).)

The Declaration testifies that BAYVIEW tried diligently to contact me about Loan # ■■■■■■, However, the truth is contrary to their testimony. My records evidence the following:

After sending a Debt Validation Notice on June 2, 2014, BAYVIEW never responded to my responsive Notice of Dispute of Debt. BAYVIEW never answered my Qualified Written Request. BAYVIEW could not provide a valid debt claim or the real party of interest, the True Holder in Due Course with a perfected security interest of the alleged debt., as governed under UCC Article 3 § 3-205. BAYVIEW could not provide a valid explanation as to how they came up with the alleged loan number, proof of value given and money lent for the alleged loan number, an affidavit of debt and damages, a valid assignment and chain of title from the original lender, and so on (please reference Section No. 6. above).

Below is an accurate record of BAYVIEW's attempts to contact me (other than monthly statements). This record contradicts BAYVIEW's declaration that "Despite the exercise of due diligence pursuant to California Civil Code §2923.55 (c) …"

| | |
|---|---|
| 4/22/2016 | BAYVIEW via Seaside Trustee Inc filed Notice of Default and Election to Sell on Passover, relying on the use of invalid and fraudulent documents, securities fraud, unsubstantiated invalid claims, an immaterial loan #, fraud, forgery, sleight of hand, fraudulent, self-serving, declarations of mortgage servicers, and hearsay. |
| 4/14/2016 | BAYVIEW called at 12:16 pm from an obscure number. The caller left a message: *"Hello, this is Diana from Bayview Loan Servicing calling for Dona Stil-es. Please return my call at 877-242-6324."* My computerized phone log showed the call from 817-438-9200. |
| 4/14/2016 | BAYVIEW called at 4:34 pm from "obscure number"■■■■■■■fake ID. I looked up the phone number. It was coming from an <u>Area Code for Antarctica</u>.<br><br>Under the Truth in Caller ID Act of 2009, Caller ID spoofing is illegal if done "with the intent to defraud, cause harm, or wrongfully obtain anything of value." |
| 3/30/2016 | BAYVIEW at 1:04 pm from 817-438-9200. When I answered there was no one there. |

**EXHIBIT F**

3/30/2016     BAYVIEW sent letter dated 3/30/16, by Fedex by 2-Day Delivery **mailed 4/8/16;
received 4/11/16,** requesting I sign necessary documents to allow BAYVIEW to
clear the title and sign my home over to BAYVIEW so they could sell it. The enclosed
documents addressed merely to "Dear Customer" contained no customer name, no
address, no loan #, and no property address whatsoever.  (EXHIBIT D – BAYVIEW's
form letter attempt to get me to sign my home over to them.)

3/4/2016      BAYVIEW sent Token Form letter certified, dated 2/26/16; received 3/4/16. Exhibit E

2/19/2016     BAYVIEW sent Token Form letter certified, dated 2/12/16, received 2/19/16 Exhibit F

Prior to 2/19/16, below is previous contact from BAYVIEW.

7/15/2015     BAYVIEW called at 8:15 am from 800-438-9200. They left no message.

4/09/2015     BAYVIEW called from 800-771-0299. *"This is Josie Longley with Bayveiw Loan
Servicing calling for Dona Stiles. Please return my call at 855-656-5727."*

2/09/2015     BAYVIEW called from 817-438-9200. They left no message.

11/28/2014    BAYVIEW called at 6:12 pm from 817-438-9200, the day after Thanksgiving, on
Friday evening. *"Hi, this message is for Dona Stiles. This is Jessica from Bayview
Lending. Please return my call at 855-375-7306."*

As of 3/27/2016, BAYVIEW still has not responded to Notice of Dispute of Debt, QWR of 6/25/2014.

**9. Notice of Default and Election to Sell is invalid:**  That in YOUR DOCUMENTS you state that
there is a breach of and default in obligations on a Deed of Trust, and that there are documents
evidencing obligations secured whereby "The Present Beneficiary" has executed and delivered to
duly appointed Trustee a written Declaration of Default and Demand for same, and has deposited
with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations
secured thereby, and has declared and does hereby declare all sums secured immediately due and
payable, and has elected to cause the "trust" property to be sold to satisfy the obligations secured.

FRAUD AND FRAUDULENT DOCUMENTS: That the Notice of Default and Election to Sell makes
claims that are not substantiated by valid evidence, but instead are based on fraudulent documents,
securities fraud, invalid and fraudulent claims, an immaterial loan #, fraud, forgery, self-serving
fraudulent documentation and declarations of mortgage servicers, and others, and hearsay. The
Notice is based on fraud and faulty evidence that is not valid but instead is a brazen attempt by a
labyrinth of self-serving companies and individuals who have manufactured their own evidence to
steal real property without a valid claim.

FRAUD: The Property cannot lawfully be sold based on fraudulent documents, securities fraud,
unsubstantiated fraudulent claims, an immaterial loan #, fraud, forgery, sleight of hand, fraudulent
documentation and declarations of self-serving mortgage servicers, and others, and hearsay.

IMMATERIAL: Underlying Loan # is immaterial because there is no valid evidence connecting it to
me or my property. BAYVIEW, Seaside Trustee Inc and Does 1-1000 have failed to provide any
valid evidence connecting me or my signature to the loan number, or any valid claim.

LACHES: The alleged debt obligation is not valid. BAYVIEW, Seaview Trustee Inc and Does 1-
1000 have failed to respond to my qualified written request and debt validation demand, and have
failed to provide a valid claim.

BREACH OF LOAN AGREEMENT: You state that there is a breach of the loan agreement;
however, I have not entered an agreement.

EXHIBIT F

**BREACH OF CONTRACT:** You state that there is has been a breach of and default in obligations for a Deed of Trust as security (based on a mortgage loan), however you have refused to provide the certified copy of the True wet-ink promissory note for the alleged contract creating an obligation to pay loan # ▮▮▮▮▮▮, validation of money lent, an affidavit of debt and damages, on which you rest your claim.

Despite our demand of 6/25/2014, BAYVIEW never identified the real party of interest, the True Holder in Due Course with a perfected security interest in the alleged debt. BAYVIEW could not provide a valid debt claim. BAYVIEW could not provide validation of a true original promissory note through named endorsements, as governed under UCC Article 3 § 3-205. <u>BAYVIEW could not provide a valid explanation as to how they came up with the alleged loan number</u> ▮▮▮▮▮. BAYVIEW could not provide a valid assignment and chain of title from the original lender. BAYVIEW could not provide proof of value given and money lent. BAYVIEW could not provide an affidavit of debt and damages. BAYVIEW could not provide a written affidavit from someone – a natural person – who has first-hand knowledge of the facts.

BAYVIEW was given a mandatory reply and deadline on which to perfect their claim for debt but they failed to do so and chose not to reply to my Notice of Dispute of Debt and Qualified Written Request dated 6/25/2014 which was sent by certified mail.

**FRAUD:** The Property cannot lawfully be sold based on fraudulent documents, securities fraud, unsubstantiated fraudulent claims, an immaterial loan #, fraud, forgery, sleight of hand, fraudulent documentation and declarations of self-serving mortgage servicers, and others, and hearsay.

**10. Exhibits:** All exhibits attached to this <u>Notice of Dispute of Debt</u> are incorporated by reference herein.

<u>Please do not send any reply correspondence to any other mail location except as follows:</u>

Dona Stiles

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Signed with reservation of all rights,

By: _____   Date: 5/26/16
  Dona Stiles

Enclosures:

Exhibit A – Copy of Seaside Trustee Inc Debt Collection Letter, unsigned

Exhibit B – Copy of NOTICE OF DEFAULT AND ENTENT TO SELL UNDER DEED OF TRUST

Exhibit C – Copy of Declaration of Mortgage Servicer, signed, certified by BAYVIEW

Exhibit D – Copy of BAYVIEW Form Letter As Evidence of Bad Faith "Due Diligence"

Exhibit E – Copy of BAYVIEW Token Form Letter, by certified mail from zip code 85281

Exhibit F – Copy of BAYVIEW Token Form Letter, by certified mail from zip code 75261

Declaration of Facts – Affidavit

**EXHIBIT F**

**"EXHIBIT A"**

**Copy of Seaside Trust Inc Debt Collection Letter –**

One-Page Copy, Attached

**"EXHIBIT B"**

**Copy of "NOTICE OF DEFAULT AND INTENT TO SELL UNDER DEED OF TRUST"**

Two-Page Copy, Attached

**"EXHIBIT C"**

**Copy of Declaration of Mortgage Servicer signed, certified by BAYVIEW**

One-Page Copy, Attached

**"EXHIBIT D"**
**Copy of BAYVIEW Form Letter As Evidence of Bad Faith "Due Diligence"**

Five-Page Copy, Attached

**"EXHIBIT E"**

**Copy of BAYVIEW Token Form Letter**

Two-Page Copy, Attached

**"EXHIBIT F"**

**Copy of BAYVIEW Token Form Letter**

Two-Page Copy, Attached

**DECLARATION OF FACTS - AFFIDAVIT:**

I, Dona Stiles, hereby declare that I dispute the alleged-debt referenced in the attached and above-referenced documents, in its entirety, and demand specific information enumerated in the letter above.

Sign: _____

Date: 5/26/16 _____

**BAYVIEW**
LOAN SERVICING

Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

August 27, 2014

**VIA OVERNIGHT MAIL**

Dona Stiles

██████████████

                              RE:    RESPA Error Resolution / Information Request
                                     Account Number ██████

Dear Ms. Whitted:

        This letter responds to your June 25th, 2014 letter to Bayview Loan Servicing LP ("Bayview") regarding your residential mortgage loan, account number ██████ (the "loan"). In response to your inquiries, we have provided the information and documentation described below.

**FDCPA**

        We note that your letter purports to be a dispute of debt under the Fair Debt Collection Practices Act[1] (the "FDCPA"). The FDCPA only permits a consumer to demand validation of a debt within a certain period of time after a debt collector first begins collection efforts on an account. These provisions of the FDCPA do not apply to your account.

**FCRA**

        You refer to the dispute resolution mechanisms of the Fair Credit Reporting Act[2] (the "FCRA"). In order to request that we conduct an investigation regarding information that we have reported to a consumer reporting agency, you must inform us of the specific information that you are disputing and provide an explanation of the basis for the dispute.[3]  You must also provide us with all supporting documentation or other

---

[1] The text of the FDCPA can be found at 15 U.S.C. §§1692 et seq.
[2] The text of the FCRA can be found at 15 U.S.C. §§1681 et seq.
[3] 16 C.F.R. § 660.4.

Bayview Loan Servicing, LLC is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

The Following mailing address must be used for all Error Notices & Information Requests:
Bayview Loan Servicing, LLC, Customer Support, 4425 Ponce de Leon Boulevard, 5th Floor, Coral Gables, Fl 33146


**EXHIBIT G**

**BAYVIEW®**
LOAN SERVICING

Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd. 5th Floor
Coral Gables, FL 33146

SEPTEMBER 30, 2016

DONA STILE

████████████████████

| | LOAN NUMBER: | ████████ |
|---|---|---|
| | CASE NUMBER : | ████████ |

Dear Ms. Stile:

This letter is in response to the recent correspondence received in our office regarding the above referenced loan.

Enclosed is a copy of the loan document (s) pertaining to your account per your request. We make every effort to provide you with the items requested, however, some documents may be unavailable.

- Note
- Mortgage

If you require additional information, please contact our Customer Service Department directly, by using our toll telephone number (800) 457-5105, Monday-Friday, 8:00 am to 9:00 pm ET.

Thank you for the opportunity to respond to your concerns.

Sincerely,

Raphaella de Carvalho
Correspondence Specialist
Customer Support Department
Bayview Loan Servicing, LLC

Bayview Loan Servicing, LLC is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

The Following mailing address must be used for all Error Notices & Information Requests:
Bayview Loan Servicing, LLC, Customer Support, 4425 Ponce de Leon Boulevard, 5th Floor, Coral Gables, FL 33146

**EXHIBIT H**

1043457

Prepared by: JESUS CALDERON

LOAN #: ▮▮▮▮▮▮

## InterestOnly<sup>SM</sup> ADJUSTABLE RATE NOTE
### (One-Year LIBOR Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

JULY 11, 2005                    HUNTINGTON BEACH                    CALIFORNIA
[Date]                          [City]                              [State]

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. $ 820,000.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.
    I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.625 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
    The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
    (A) Time and Place of Payments
    I will make a payment on the  first        day of every month, beginning on  SEPTEMBER 01, 2005 .
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
    I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on  AUGUST 01, 2035        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.
    (B) Amount of My Initial Monthly Payments
    My monthly payment will be in the amount of U.S. $ 3,843.75        before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.
    (C) Monthly Payment Changes
    Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
8D906-XX (04/03) (d)                                    Page 1 of 4

Initials: 





EXHIBIT H

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

███████████████████████ 15.00

████████████████████████ 12/20/16

47 NC-5 T09 F13   3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

RECORDING REQUESTED BY:

AND WHEN RECORDED TO:
**Bank of New York Mellon**
**c/o Bayview Loan Servicing, LLC.**
**4425 Ponce De Leon Blvd., 5th Floor**
**Coral Gables, Fl. 33146**

**Forward Tax Statements to**
**the address given above**

---

SPACE ABOVE LINE FOR RECORDER'S USE

TS #: ███████████            Order #: ███████████████
Loan #: ███████

## TRUSTEE'S DEED UPON SALE

A.P.N.: ██████████            Transfer Tax: **$0.00**
THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE,
SECTION 480.3
The Grantee Herein was the Foreclosing Beneficiary.          "This instrument is being recorded as an
The Amount of the Unpaid Debt was **$1,002,883.48**          ACCOMMODATION ONLY, with no
The Amount Paid by the Grantee was **$997,500.00**           Representation as to its effect upon title"
Said Property is in the City of **HUNTINGTON BEACH**, County of **Orange**

**Seaside Trustee Inc.** , as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly
described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to
**The Bank of New York Mellon fka The Bank of New York, as Trustee for The Certificateholders of CWMBS,**
**Inc., CHL Mortgage Pass-Through Trust 2005-HYB6, Mortgage Pass-Through Certificates, Series 2005-**
**HYB6**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed
to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Orange**,
State of California, described as follows:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **DONA**
**STILES, A SINGLE WOMAN** as Trustor, dated **7/11/2005** of the Official Records in the office of the Recorder of
**Orange**, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the
duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and
Election to Sell under the Deed of Trust recorded on **7/15/2005**, instrument number 2005000549928, Book xx, Page
**xx and Loan Modification Agreement recorded 4/6/11 as instr #2011000175552** of official records.  Trustee
having complied with all applicable statutory requirements of the State of California and performed all duties
required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its
recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each
person entitled to notice in compliance with California Civil Code 2924b.

Mail Future Tax Statements to:
**Bank of New York Mellon c/o Bayview Loan Servicing, LLC.**
**4425 Ponce De Leon Blvd., 5th Floor, Coral Gables, Fl. 33146**

Document Number: ███████████ Page: 1 of 4          **EXHIBIT I**

# TRUSTEE'S DEED UPON SALE

TS #: ███████
Loan #: █████
Order #: ████████████

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with.  Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on 12/12/2016.  Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$997,500.00**, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **Seaside Trustee Inc.** , as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

Date: **12/19/2016**

Seaside Trustee Inc.

By: _Elvia Bouche_
ELVIA BOUCHE, VICE PRESIDENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF Nevada
COUNTY OF Clark

On 12/19/2016 before me, CHRISTIAN TAPIA , Notary Public, Personally appeared, ELVIA BOUCHE who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Nevada that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Signature_
Signature of Officer

CHRISTIAN TAPIA
Notary Public, State of Nevada
Appointment No. 10-2427-1
My Appt. Expires Jul 24, 2018

**EXHIBIT I**

## TRUSTEE'S DEED UPON SALE

TS #: ████████████

Loan #: ████████

Order #: ████████████

LEGAL DESCRIPTION

LOT 67 OF TRACT 5132, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 182, PAGES 14, 15, 16, 17,
18, 19 AND 20 OF MISCELLANEIOUS MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY. EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND
OTHER HYDROCARBONS, BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF
SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD

**EXHIBIT I**

Certified Copy of document number 201600646452

THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.
DATE:_____12/23/2016_____

CERTIFICATION FEE:___4.00___

COUNTY CLERK-RECORDER

*Hugh Nguyen*

ORANGE COUNTY
STATE OF CALIFORNIA

Document Number: ██████████   Page: 4 of 4



Christopher M. McDermott (SBN 253411)
cmcdermott@aldridgepite.com
Joseph C. Delmotte (SBN 259460)
jdelmotte@aldridgepite.com
**ALDRIDGE PITE, LLP**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for
The Bank of New York Mellon fka The Bank of
New York, as Trustee for The Certificateholders of
CWMBS, Inc., CHL Mortgage Pass-Through Trust
2005-HYB6, Mortgage Pass-Through Certificates,
Series 2005-HYB6

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:17-bk-13293-ES |
| DONA D STILES, | Chapter 7 |
| Debtor(s). | **OPPOSITION TO MOTION TO AVOID LIEN UNDER 11 U.S.C. § 522(f) (Real Property)** |

The Bank of New York Mellon FKA the Bank of New York, as Trustee for The Certificateholders of CWBS, Inc. CHL Mortgage Pass-Through Trust 2005-HYB6, Mortgage Pass-Through Certificates, Series 2005-HYB6[1] (hereinafter "BONY") hereby submits this Opposition to Motion to Avoid Lien Under 11 U.S.C. § 522(f) ("Motion").

### I. STATEMENT OF FACTS

1.    On or about July 11, 2005, Dona Stiles ("Debtor") executed an Adjustable Rate Note in favor of Countrywide Home Loans, Inc. with an original principal balance of $820,000.00 (the "Note"). The Note was secured by a Deed of Trust encumbering the real property located at 3891 Finisterre Drive, Huntington Beach, CA 92649-3039 (the "Property" or "Deed of Trust"). The Note

---

[1] This Opposition shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004, notwithstanding Aldridge Pite, LLP's participation in this proceeding. Moreover, the within party does not authorize Aldridge Pite, LLP, either expressly or impliedly through Aldridge Pite, LLP's participation in this proceeding, to act as its agent for purposes of service under Fed. R. Bankr. P. 7004.

1   and Deed of Trust are collectively referred to as the "Loan". Copies of the Note and Deed of Trust

2   are attached hereto as **Exhibits 1** and **2**.

3       2.      Subsequently, on November 27, 2013, an Assignment of Deed of Trust was recorded

4   transferring all right, title, and interest in the Deed of Trust to BONY. A copy of the Assignment of

5   Deed of Trust is attached hereto as **Exhibit 3**.

6       3.      Due to the Debtor's default under the terms of the Loan, on April 22, 2016, a Notice

7   of Default and Election to Sell Under Deed of Trust ("NOD") was recorded in the Orange County

8   Clerk's Office reflecting a default amount under the Loan of $125,098.23 and indicating that a

9   foreclosure sale of the Property would be scheduled if the Loan were not reinstated. A copy of the

10  NOD is attached hereto as **Exhibit 4**.

11      4.      On July 21, 2016, a Notice of Trustee's Sale ("NOS") was recorded in the Orange

12  County Clerk's Office scheduling a foreclosure sale of the Property for August 18, 2016. The

13  foreclosure sale was postponed multiple times and eventually took place on December 12, 2016. A

14  copy of the NOS is attached hereto as **Exhibit 5**.

15      5.      On December 20, 2016, a Trustee's Deed Upon Sale ("TDUS") was recorded in the

16  Orange County Clerk's Office reflecting the Property was sold on December 12, 2016, to BONY as

17  the successful bidder at the foreclosure sale. A copy of the TDUS is attached hereto as **Exhibit 6**.

18      6.      On August 17, 2017, Debtor filed the instant Chapter 7 bankruptcy petition in the

19  United States Bankruptcy Court for the Central District of California, Santa Ana Division, and was

20  assigned case number 8:17-bk-13293-ES.

21      7.      On September 15, 2017, Debtor filed the Motion purporting to seek a Court order

22  avoid BONY's lien.

23  /././

24  /././

25  /././

26  /././

27  /././

28  /././

## II. ARGUMENT

### A.    DEBTOR'S MOTION SHOULD BE DENIED AS BONY HOLDS TITLE TO THE PROPERTY, NOT A LIEN

Debtor's Motion is filed pursuant to 11 U.S.C. § 522(f) and purports to assert that BONY holds an avoidable judicial lien against the Property. However, as set forth above, BONY holds legal title to the Property by virtue of the recordation of the TDUS. Previously, BONY held a consensual lien evidenced by the Deed of Trust against the Property, which is unavoidable under § 522(f). BONY's consensual lien was extinguished when it completed its foreclosure sale of the Property. As a consequence, the Debtor's Motion must be denied as it purports to avoid a lien that does not exist.

Respectfully submitted,

Dated: September 29, 2017          **ALDRIDGE PITE, LLP**


By: */s/ Christopher M. McDermott*
Christopher M. McDermott (SBN 253411)
Attorneys for The Bank of New York Mellon fka
The Bank of New York, as Trustee for The
Certificateholders of CWMBS, Inc., CHL Mortgage
Pass-Through Trust 2005-HYB6, Mortgage Pass-
Through Certificates, Series 2005-HYB6

Prepared by: JESUS CALDERON

LOAN #: █████████

## InterestOnly<sup>SM</sup> ADJUSTABLE RATE NOTE
### (One-Year **LIBOR** Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

JULY 11, 2005                  HUNTINGTON BEACH                  CALIFORNIA
     [Date]                          [City]                          [State]

3891 FINISTERRE DRIVE, HUNTINGTON BEACH, CA 92649-3039
                          [Property Address]

**1. BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $ 820,000.00       (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.
   I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
   Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.625  %. The interest rate I will pay may change in accordance with Section 4 of this Note.
   The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
   **(A) Time and Place of Payments**
   I will make a payment on the  first       day of every month, beginning on  SEPTEMBER 01, 2005   .
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
   I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on
  AUGUST 01, 2035      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.
   **(B) Amount of My Initial Monthly Payments**
   My monthly payment will be in the amount of U.S. $ 3,843.75       before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.
   **(C) Monthly Payment Changes**
   Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)(d)                    Page 1 of 4                         Initials: DS



**EXHIBIT 1**

LOAN #: ███████

## 4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first                day of
AUGUST, 2012      , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The
date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest
rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of
interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall
Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current
Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.
The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER          percentage points (     2.250   %) to the Current Index. The Note Holder will then
round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in
Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid
principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal
payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    10.625   % or less than
2.250   %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more
than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never
be greater than    10.625   %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment
beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to
me a notice of such change. The notice will include information required by law to be given to me and also the title and
telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest
Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use
my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments
unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly
payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my
payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal
and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other
loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge
shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from
me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the
Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated
as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN          calendar
days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be       5.000   % of my
overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will
pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

Initials: DS

# EXHIBIT 1

LOAN #: ▓▓▓▓▓

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)    Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)    When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials: 

# EXHIBIT 1

LOAN # :

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
DONA STILES                                         -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY
David A. Spector
Managing Director

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)                                      Page 4 of 4

# EXHIBIT 1

RECORDING REQUESTED BY:
NORTH AMERICAN TITLE CO.

**This Document was electronically recorded by North American**

Recording Requested By:
J. LEVIN

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

████████████ 69.00
2005000549928 04:21pm 07/15/05

117 48 D11 22
0.00 0.00 0.00 0.00 63.00 0.00 0.00 0.00

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT P'
P.O.Box 10423
Van Nuys, CA 91410-
Prepared By:
JESUS CALDERON



STILES        D

———————————— [Space Above This Line For Recording Data] ————————————

[Escrow/Closing #]                    [Doc ID #]

# DEED OF TRUST

MIN ████████████████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated JULY 11, 2005      , together with all Riders to this document.
(B) **"Borrower"** is
DONA STILES, A SINGLE WOMAN

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 16

Initials: DS

VMP -6A(CA) (0207)    CHL (09/02)(d)    VMP MORTGAGE FORMS - (800)521-7291
CONV/VA

Form 3005 1/01




**EXHIBIT 2**

DOC ID #: ███████████

Borrower's address is
17171 BOLSA CHICA #43, HUNTINGTON BEACH, CA 92649
Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613

**(D) "Trustee"** is
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated JULY 11, 2005    . The Note states that Borrower owes Lender
EIGHT HUNDRED TWENTY THOUSAND and 00/100

Dollars (U.S. $ 820,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than AUGUST 01, 2035    .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

**EXHIBIT 2**

DOC ID #: ███████

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                        of                        ORANGE                        :

[Type of Recording Jurisdiction]                                    [Name of Recording Jurisdiction]

LOT 67 OF TRACT 5132, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 182, PAGES 14, 15, 16, 17, 18, 19 AND 20 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.    EXCEPT THEREFROM ALL OIL , GAS, MINERALS AND OTHER HYDROCARBONS, BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

Parcel ID Number: ████████                                    which currently has the address of
                3891 FINISTERRE DRIVE, HUNTINGTON BEACH                                    ,
                                [Street/City]

California 92649-3039 ("Property Address"):

        [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

**EXHIBIT 2**

DOC ID #: ▉▉▉▉▉▉▉▉

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**EXHIBIT 2**

DOC ID #: ▮▮▮▮▮▮▮▮▮▮

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**EXHIBIT 2**

DOC ID #:

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

**EXHIBIT 2**

DOC ID #: ██████████

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

**EXHIBIT 2**

DOC ID #: ███████████

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

Initials: DS

VMP®-6A(CA) (0207)    CHL (09/02)    Page 8 of 16    Form 3005 1/01

**EXHIBIT 2**

DOC ID #: ▮▮▮▮▮▮▮▮▮

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

**EXHIBIT 2**

DOC ID #: ███████████

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

**EXHIBIT 2**

DOC ID #: ███████

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Initials: _DS_

VMP®-6A(CA) (0207)        CHL (09/02)           Page 11 of 16                     Form 3005 1/01

**EXHIBIT 2**

DOC ID #: ███████

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

**EXHIBIT 2**

DOC ID #: ████████████

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**EXHIBIT 2**

DOC ID #: ▐▐▐▐▐▐▐▐▐

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**EXHIBIT 2**

DOC ID #: ███████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                DONA STILES                    -Borrower

_____    _____ (Seal)
                                                               -Borrower

                                _____ (Seal)
                                                               -Borrower

                                _____ (Seal)
                                                               -Borrower

-6A(CA) (0207)    CHL (09/02)                          Form 3005  1/01

**EXHIBIT 2**

DOC ID #: ▬▬▬▬▬▬

State of California
County of Orange

} ss.

On ~~June~~ 27. July 12, 2005 before me,
Erin Fruechtl, notary

personally appeared

Donna Stiles , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



ERIN FRUECHTL
Commission # 1516396
Notary Public - California
Orange County
My Comm. Expires Sep 30, 2008

Initials: DS

VMP®-6A(CA) (0207)       CHL (09/02)       Page 16 of 16       Form 3005  1/01

**EXHIBIT 2**

GOVERNMENT CODE
27361.7

I certify under penalty of perjury that the notary seal
on the document to which this statement is attached,
reads as follows:

Name of notary _____ Erin Fruechtl _____

Date commisson expires _____ 9-30-2008 _____

Commission # _____ 1516396 _____

County where bond is filed _____ Orange _____

Manufacture/Vender # _____ NNA1 _____

Place of execution _____ Orange _____

Date _____ 2/15/2005 _____

Signature _____ D. Senn _____

North American Title Company

**EXHIBIT 2**

Assessor's Parcel Number:

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
JESUS CALDERON

Recording Requested By:

—————————————— [Space Above This Line For Recording Data]——————————————

# FIXED/ADJUSTABLE RATE RIDER
**(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)**

[Escrow/Closing #]              [Doc ID #]

CONV
* MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)(d)              Page 1 of 5              Initials: _DS_

# EXHIBIT 2

DOC ID #: ██████████

THIS FIXED/ADJUSTABLE RATE RIDER is made this ELEVENTH            day of
JULY, 2005           , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:
3891 FINISTERRE DRIVE
HUNTINGTON BEACH, CA 92649-3039
[Property Address]
**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
    The Note provides for an initial fixed interest rate of      5.625 %. The Note also provides
for a change in the initial fixed rate to an adjustable interest rate, as follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first          day of AUGUST, 2012        , and the adjustable interest rate I will pay
may change on that day every 12th month thereafter. The date on which my initial fixed interest rate
changes to an adjustable interest rate, and each date on which my adjustable interest rate could
change, is called a "Change Date."
    **(B) The Index**
    Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the
London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure
available as of the date 45 days before each Change Date is called the "Current Index".
    If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
    **(C) Calculation of Changes**
    Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER           percentage points (    2.250 %) to the Current Index.
the Note Holder will then round the result of this addition to the nearest one-eighth of one percentage
point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date.

CONV
● MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)                    Page 2 of 5                    Initials: DS

**EXHIBIT 2**

DOC ID #: ████████

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.625 % or less than    2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.625 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)                    Page 3 of 5                    Initials: _DS_

**EXHIBIT 2**

DOC ID #: ▆▆▆▆▆▆▆▆

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                    Page 4 of 5                    Initials: _____

# EXHIBIT 2

DOC ID #: ███████████

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
DONA STILES                                                    -Borrower

_____ (Seal)
                                                                       -Borrower

_____ (Seal)
                                                                       -Borrower

_____ (Seal)
                                                                       -Borrower

CONV
● MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                              Page 5 of 5

**EXHIBIT 2**

Recording Requested By:
Bank of America
Prepared By: Diana De Avila
1800 Tapo Canyon Road
Simi Valley, CA 93063
800-444-4302
When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder                    12.00

* $ R 0 0 0 6 3 3 2 3 0 3 *
2013000049911 9:29 am 11/27/13
47 422 A32 F13    2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

Property Address:
3891 Finisterre DRIVE
Huntington Beach, CA 92649-3039

This space for Recorder's use

MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** (herein "Assignor"), whose address is P.O. Box 2026, Flint, MI 48501-2026, AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. and its successors and assigns hereby assign and transfer to **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2005-HYB6, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-HYB6** (herein "Assignee"), whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063, and its successors and assigns all its right, title, and interest in and to a certain Deed Of Trust described below.

| | |
|---|---|
| Original Lender: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.** |
| Original Borrower(s): | **DONA STILES, A SINGLE WOMAN** |
| Original Trustee: | **RECONTRUST COMPANY, N.A.** |
| Date of Deed of Trust: | **7/11/2005** |
| Original Loan Amount: | **$820,000.00** |

Recorded in Orange County, CA on: 7/15/2005, book N/A, page N/A and instrument number 2005000549928

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.

By: _____
    Trisha Jackson Assistant Secretary

Date _____    NOV 14 2013

# EXHIBIT 3

State of California
County of Ventura

On __NOV 14 2013__ before me, _____ J. Mastrolonardo _____, Notary Public, personally appeared _____ Trisha Jackson _____, who proved to me on the basis of satisfactory evidence to be the person (s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____ J.Mastrolonardo _____    (Seal)
My Commission Expires: _____ Sept 19, 2015

# EXHIBIT 3

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

15.00

* $ R 0 0 0 8 3 2 0 5 6 8 $ *
**2016000177966 2:10 pm 04/22/16**
47 406 N15 F13    3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
**Seaside Trustee Inc.**
**P.O. Box 752377**
**Las Vegas, Nevada 89136**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: ▮▮▮▮    Loan No.: ▮▮▮▮
A.P.N.: 178-313-05

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE
**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,**
and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$125,098.33 as of 4/20/2016,** and will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:
**The Bank of New York Mellon fka The Bank of New York, as Trustee for The Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-HYB6, Mortgage Pass-Through Certificates, Series 2005-HYB6**
**c/o Bayview Loan Servicing, LLC.**
**4425 Ponce De Leon Blvd., 5th Floor**
**Coral Gables, Fl. 33146**
**Phone: (800)457-5105**

# EXHIBIT 4

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

TS No.: ███████    Loan No.: ██████

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Seaside Trustee Inc.** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **7/11/2005**, executed by **DONA STILES, A SINGLE WOMAN**, as Trustor, to secure certain obligations in favor of **Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Countrywide Home Loans, Inc. its successors and assigns**, as beneficiary, recorded **7/15/2005**, as Instrument No. **2005000549928**, in Book **xx**, Page **xx**, **and Loan Modification Agreement recorded 4/6/11 as instr #2011000175552** of Official Records in the Office of the Recorder of **Orange** County, California describing land therein as: As more fully described on said Deed of Trust.

Including one **NOTE(S) FOR THE ORIGINAL** sum of **$820,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:
   **Installment of Principal and Interest plus impounds and/or advances which became due on 11/1/2013 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

   That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.
**Dated: 4/20/2016**

Seaside Trustee Inc.

BY: *E Bouche-*
*E. BOUCHE, VICE PRESIDENT*

# EXHIBIT 4

## Declaration of Mortgage Servicer Pursuant to
## Civil Code §2923.55(c)

Borrower(s):  DONA STILES
Mortgage Servicer: Bayview Loan Servicing, LLC
Property Address:  3891 FINISTERRE DRIVE HUNTINGTON BEACH, CA 92649
Loan No.: ▓▓▓▓▓▓▓
T.S. No.: ▓▓▓▓▓▓▓

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☐ The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2923.55(b) (2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have; passed since the initial contact was made.

2. ☐ The mortgage servicer has tried with due diligence to contact the borrower(s) as required by California Civil Code § 2923.55(f) (1) and § 2923.55(f) (3)-(5). The telephone contact requirements under § 2923.55(f) (2) were not attempted pursuant to the borrower's previously submitted written cease communication request. No contact has been made despite such due diligence. The due diligence efforts were satisfied on _____ .

3. ☒ Despite the exercise of due diligence pursuant to California Civil Code § 2923.55(f), the Mortgage servicer has been unable to contact the borrower to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

4. ☐ No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

5. ☐ The requirements of Cal. Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or first deed of trust that secures a loan, or that encumbers real property, described in Civil Code § 2924.15(a).

6. ☐ The requirements of Cal. Civil Code § 2923.55 do not apply because:

    a. _____ The secured property is non-owner occupied.

    b. _____ The secured property is commercial or vacant land.

    c. _____ The secured property is exempt from due diligence, the borrower is deceased.

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

                                            Bayview Loan Servicing, LLC

Dated: 04/08/2016                   By: _____

                                          Gregory Harrison
                                          State Declaration Processor Loss Mitigation - QA

# EXHIBIT 4

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

12.00

**RECORDING REQUESTED BY**

2016000334972 3:54 pm 07/21/16
90 404 N34 F13   2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

**AND WHEN RECORDED MAIL TO:**
Seaside Trustee Inc.
P.O. Box 752377
Las Vegas, Nevada 89136
(702) 207-0292

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: ▮▮▮▮▮    Loan No.: ▮▮▮▮▮
A.P.N.: 178-313-05

## NOTICE OF TRUSTEE'S SALE

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE
IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES
PROVIDED TO THE TRUSTOR.**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 7/11/2005. UNLESS
YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A
PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE
PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn
by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings
association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this
state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now
held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The
sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or
encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late
charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees,
charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale)
reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: **DONA STILES, A SINGLE WOMAN**
Duly Appointed Trustee: **Seaside Trustee Inc.**
Recorded 7/15/2005 as Instrument No. 2005000549928 in book xx, page xx and Loan Modification Agreement
recorded 4/6/11 as instr #2011000175552 of Official Records in the office of the Recorder of Orange County,
California.
Date of Sale: 8/18/2016 at 3:00 PM
Place of Sale:    On the front steps to the entrance of the Orange Civic Center, 300 E. Chapman, Orange, CA
Amount of unpaid balance and other charges: $985,482.46

**EXHIBIT 5**

7/22/2016

Street Address or other common designation of real property:   **3891 FINISTERRE DR**
**HUNTINGTON BEACH, CA. 92648**

A.P.N.: **178-313-05**

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: We request certified funds at sale be payable directly to SEASIDE TRUSTEE INC. to avoid delays in issuing the final deed.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (855) 986-9342
Sale line or visit this Internet Web site www.Superiordefault.com using the file number assigned to this case 1507654CA. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: 7/20/2016
Trustee Sales Information:
(855) 986-9342
www.Superiordefault.com
650 N. Rose Dr. Ste. 147
Placentia, Ca. 92870

Seaside Trustee Inc.
P.O. Box 2676
Ventura, Ca. 93002

Seaside Trustee Inc.

_____
J. Weber, Authorized Signer

# EXHIBIT 5

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

15.00

\* $ R 0 0 0 8 9 4 1 7 8 1 5 \*
2016000646452 3:08 pm 12/20/16
47 NC-5 T09 F13   3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

RECORDING REQUESTED BY:

AND WHEN RECORDED TO:
Bank of New York Mellon
c/o Bayview Loan Servicing, LLC.
4425 Ponce De Leon Blvd., 5th Floor
Coral Gables, FL 33146

Forward Tax Statements to
the address given above

SPACE ABOVE LINE FOR RECORDER'S USE

TS #: ▮▮▮▮▮                      Order #: 150252144-CA-VOI
Loan #: ▮▮▮▮▮

# TRUSTEE'S DEED UPON SALE

A.P.N.: 178-313-05                        Transfer Tax: $0.00
THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE,
SECTION 480.3
The Grantee Herein was the Foreclosing Beneficiary.
The Amount of the Unpaid Debt was $1,002,883.48
The Amount Paid by the Grantee was $997,500.00
Said Property is in the City of HUNTINGTON BEACH, County of Orange

"This instrument is being recorded as an
ACCOMMODATION ONLY, with no
Representation as to its effect upon title"

Seaside Trustee Inc. , as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly
described or as duly appointed Trustee) does hereby GRANT and CONVEY to
The Bank of New York Mellon fka The Bank of New York, as Trustee for The Certificateholders of CWMBS,
Inc., CHL Mortgage Pass-Through Trust 2005-HYB6, Mortgage Pass-Through Certificates, Series 2005-
HYB6

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed
to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of  Orange,
State of California, described as follows:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by DONA
STILES, A SINGLE WOMAN as Trustor, dated 7/11/2005 of the Official Records in the office of the Recorder of
Orange, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the
duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and
Election to Sell under the Deed of Trust recorded on 7/15/2005, instrument number 2005000549928, Book xx, Page
xx and Loan Modification Agreement recorded 4/6/11 as instr #2011000175552 of official records.  Trustee
having complied with all applicable statutory requirements of the State of California and performed all duties
required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its
recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each
person entitled to notice in compliance with California Civil Code 2924b.

Mail Future Tax Statements to:
Bank of New York Mellon c/o Bayview Loan Servicing, LLC.
4425 Ponce De Leon Blvd., 5th Floor, Coral Gables, Fl. 33146

# EXHIBIT 6

# TRUSTEE'S DEED UPON SALE

TS #: ▮▮▮▮
Loan #: ▮▮▮▮
Order #: 150252144-CA-VOI

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with.  Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on 12/12/2016.  Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$997,500.00**, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, Seaside Trustee Inc. , as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

Date: 12/19/2016

Seaside Trustee Inc.

By: _Elvia Bouche_

ELVIA BOUCHE, VICE PRESIDENT

> A notary public or other officer completing this
> certificate verifies only the identity of the
> individual who signed the document to which this
> certificate is attached, and not the truthfulness,
> accuracy, or validity of that document.

STATE OF Nevada
COUNTY OF Clark

On 12/19/2016 before me, CHRISTIAN TAPIA , Notary Public, Personally appeared, ELVIA BOUCHE who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Nevada that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Officer

> CHRISTIAN TAPIA
> Notary Public, State of Nevada
> Appointment No. 10-2427-1
> My Appt. Expires Jul 24, 2018

# EXHIBIT 6

## TRUSTEE'S DEED UPON SALE

TS #: ███████

Loan #: ███████

Order #: 150252144-CA-VOI

LEGAL DESCRIPTION

LOT 67 OF TRACT 5132, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 182, PAGES 14, 15, 16, 17,
18, 19 AND 20 OF MISCELLANEIOUS MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY. EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND
OTHER HYDROCARBONS, BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF
SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD

# EXHIBIT 6

THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: 12/23/2016

CERTIFICATION FEE: 4.00

COUNTY CLERK-RECORDER

Hugh Nguyen

ORANGE COUNTY
STATE OF CALIFORNIA

Certified Copy of document number 2016000646452

**EXHIBIT 6**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 4375 Jutland Drive, Suite 200, San Diego, CA 92117.

A true and correct copy of the foregoing document entitled: **OPPOSITION TO MOTION TO AVOID LIEN UNDER 11 U.S.C. 522(f) (Real Property); AND SUPPORTING DOCUMENTS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On September 29, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Trustee:** Weneta M Kosmala (TR)    ecf.alert+Kosmala@titlexi.com
- **United States Trustee:** (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On September 29, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

- **Debtor:** Dona D. Stiles, 16787 Beach Blvd #635, Huntington Beach, CA 92647
- **Judge:** Hon. Erithe A. Smith, U.S. Bankruptcy Court, 411 W. Fourth St., Ste. 5040, Santa Ana, CA 92701

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 29, 2017 | Marie Begay | /s/ *Marie Begay* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                          **F 9013-3.1.PROOF.SERVICE**